**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ERIC WHITE, on behalf of himself and all others similarly situated,** | **Case No. 19-cv-00114** |
| **Plaintiff,** | **AMENDED CLASS ACTION COMPLAINT** |
| **v.** | **JURY TRIAL DEMANDED** |
| **UNITED AIRLINES, INC. and UNITED CONTINENTAL HOLDINGS, INC.,** | **Exempt From Filing Fees Under 38 U.S.C. § 4323(h)(1)** |
| **Defendants,** | |

Plaintiff Eric White, on behalf of himself and other similarly situated individuals, by and through his attorneys, alleges as follows:

<u>**INTRODUCTION**</u>

1.      This is a class action under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq*., on behalf of current and former employees of United Continental Holdings, Inc. ("UCH") and United Airlines, Inc. ("UAL") (collectively, "Defendants" or "United"), who took short-term military leave during their employment but were not paid their normal wages or salaries by Defendants during such periods of military leave as required by USERRA, and/or did not receive credit under the United Continental Holdings, Inc. Profit Sharing Plan ("the Profit Sharing Plan" or "the Plan") for periods of military leave as required by USERRA.

2.      USERRA protects the rights of servicemembers who take leaves of absence from their civilian employers to perform qualified military service.  USERRA § 4316(b) requires military leave to be treated no less favorably than other, comparable forms of leave with respect

to the rights and benefits that employees receive during their leaves of absence. Since at least January 1, 2006, Defendants violated this provision in two ways.

3.      First, Defendants had a policy and practice of continuing to pay their employees' regular wages or salaries during certain leaves-of-absence (such as jury duty and sick leave), but not paying regular wages or salaries to employees when they take short-term military leave. By paying employees when they took jury duty leave, sick leave, and other comparable forms of non-military leave, Defendants were required by USERRA to do the same for their employees who took short-term military leave. By failing to pay wages and salaries to military service members during their short-term military leave, while continuing to pay employees their wages or salaries during periods of jury duty, sick leave, and other comparable forms of non-military leave, Defendants violated USERRA's mandate to treat military leave no less favorably than other comparable forms of non-military leave.

4.      Second, Defendants failed to credit employees' military leave for the purpose of calculating such employees' profit sharing awards under the Plan. By doing so, Defendants violated USERRA § 4318, which requires all employee pension benefit plans – like United's profit sharing plan – to treat military service as continued service for an employer. In addition, because Defendants did not give profit sharing credit to employees who took short-term military leave but gave credit for the purpose of the profit sharing plan to employees when they took comparable forms of non-military leave such as sick leave and jury duty, Defendants violated USERRA § 4316(b), which requires that employees who take military leave receive the same rights and benefits, including profit sharing, as employees who take comparable forms of non-military leave.

5.     As a result of these violations, Plaintiffs and other servicemembers employed by Defendants received less compensation than they would have received if Defendants had provided them with paid leave during periods of short-term military leave.  In addition, Plaintiff and other servicemembers who were participants in the Profit Sharing Plan received smaller profit sharing awards than they otherwise would have received if they had been paid during military leave or if the Profit Sharing Plan had credited their military leave for the purposes of calculating profit sharing awards.

6.     This action seeks a declaration that Defendants violated USERRA by failing to pay Plaintiff and members of the proposed Class during their periods of short-term military leave, a declaration that Defendants violated USERRA by failing to credit employees' short-term military leave and long-term military leave for the purpose of calculating their profit sharing awards, an order requiring Defendants to pay employees when they take short-term military leave in the future so long as Defendants provide pay to employees when they take other comparable forms of non-military leave, an order requiring Defendants to credit employees' military service for the purposes of calculating their profit sharing awards in the future, an order requiring Defendants to pay Plaintiff and members of the Class the wages or salaries they should have earned during their periods of short-term military leave since 2006, and an order requiring Defendants to recalculate and pay Plaintiff and members of the Class the profit sharing awards they received since 2006, consistent with the requirements of USERRA.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this action arises under USERRA, a law of the United States. This Court has subject matter jurisdiction over the USERRA claim pursuant to 38 U.S.C. § 4323(b)(3), which

provides the district courts of the United States with jurisdiction over any USERRA action brought against a private employer.

8.      Venue is proper in this District under 38 U.S.C. § 4323(c)(2), because Defendants are the private employers of Plaintiff and maintain a place of business in at least two locations in this District.  Both United Continental Holdings, Inc. and United Airlines, Inc. have their corporate headquarters at 233 S. Wacker Drive, Chicago, IL 60606.  In addition, United Airlines maintains one of its hubs at Chicago's O'Hare International Airport, where it employs thousands of employees.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims in this action occurred in this District.

## **PARTIES**

9.      Plaintiff Eric White is and has been employed as a pilot by Defendants or their predecessor companies since 2005.  White was a pilot at Continental Airlines from 2005 to 2010, and became a United Airlines pilot in 2010, when Continental Airlines was acquired by UAL Corporation.  As part of the merger, UAL Corporation changed its name to United Continental Holdings, Inc.  White currently serves as a First Officer flying 787 passenger airplanes for United.  During his career at United, White has routinely flown to and from Chicago's O'Hare International Airport in this District.  Since 2000, White has served continuously as a pilot in the Air Force, including on active duty and on reserve duty.  During his employment with Defendants, White has routinely taken military leave, including numerous periods of short-term military leave and long-term military leave.  White resides in Ladera Ranch, California.

10.     Defendant United Continental Holdings, Inc. ("UCH") is a publicly traded company and is a holding company.  Its principal, wholly-owned subsidiary is United Airlines, Inc.  UCH is and has been incorporated under the laws of the State of Delaware since December

30, 1968.  UCH's corporate headquarters and principal executive office is located at 233 South Wacker Drive, Chicago, Illinois 60606.  UCH is the sponsor of the Plan.  Defendant UCH is also a private employer within the meaning of the 38 U.S.C. § 4303(4)(A), and 20 U.S.C. § 1002.5(d)(1), because, UCH has "control over employment opportunities" at its wholly-owned subsidiary, United Airlines and because UCH subsidiaries and affiliates have delegated the performance of employment-related responsibilities, specifically profit sharing awards, to UCH which UCH provides through the Profit Sharing Plan.

11.     Defendant United Airlines, Inc. ("UAL") is a wholly owned subsidiary of UCH. Defendant UAL is an employer within the meaning of 38 U.S.C. § 4303(4)(A), because it "pays salary or wages for work performed" and has "control over employment opportunities" of its employees, including Plaintiff.

## CLASS ACTION ALLEGATIONS

12.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

(1)     The Paid Leave Class:  Current or former employees of United Continental Holdings, Inc., United Airlines, Inc., Continental Airlines, Inc., and/or any of their subsidiaries or predecessors, who during their employment with any of these entities took short-term military leave from their employment and during such short-term military leave were not paid the wages or salary that they would have earned had they continued to work their ordinary work schedules from January 1, 2006, through the date of judgment in this action.

(2)     The Profit Sharing Class:  Qualified Employees under the United Continental Holdings, Inc. Profit Sharing Plan who took short-term military leave or long-

term military leave from their employment with an Employer under the Plan

during a Plan Year in which they were eligible to receive an award under the Plan

(or would have been eligible to receive an award under the Plan if their earnings

associated with their military leave had been credited), from January 1, 2006,

through the date of judgment in this action.

Excluded from the Classes are any members of the Committee who were responsible for

administering the Profit Sharing Plan, any person to whom UCH and/or the Committee delegated

authority to manage or control the administration of the Plan, and all former or current

employees who previously reached settlements with or judgments against Defendants in

USERRA actions concerning United's failure to pay wages or salaries during periods of short-

term military leave and United's failure to credit employees' military service for the purposes of

calculating profit sharing awards.

**Impracticality of Joinder**

13.     The members of the Classes are so numerous that joinder of all members of the

proposed Classes is impracticable.  According to Defendants' 2017 Annual Report, as of

December 31, 2017, Defendants employed 89,800 employees, including 11,492 pilots, 22,676

flight attendants, 13,299 passenger service employees, 13,187 fleet service employees, 9,535

technicians, 1,000 storekeeper employees, and 402 dispatchers.  According to Defendants'

website, https://united-veterans.jobs/, "United has many employees who have proudly served in

the military, and some who continue to serve in the reserve components."  And Defendants' web

site states that they actively recruit members of the military as employees.  Based on these

statements, at least several thousand former and current employees of Defendants are members

of each of the Classes.

14.     According to United's Corporate Fact Sheet, https://hub.united.com/corporate-fact-sheet/, United Airlines serves 231 airports in the United States of which six are hubs (Chicago, Denver, Houston, Los Angeles, Newark, San Francisco and Washington-Dulles), plus 125 international destinations.  Based on the varied locations of Defendants' employees, the members of the Classes are geographically dispersed across the United States, if not the world.

**Commonality**

15.     The central questions in this case, which will generate common answers, are (1) whether Defendants' policy or practice of failing to pay their employees' wages and/or salaries during periods of short-term military leave violates USERRA § 4316, and whether (2) Defendants' policy of failing to credit military service for the purposes of calculating profit sharing awards violated USERRA § 4316 and USERRA § 4318.

16.     Plaintiff's claims raise subsidiary common questions, including the following:

(a)     whether Defendants maintain a policy or practice of refusing to pay their employees when they take short-term military leave, while paying employees when they take other forms of comparable leave;

(b)     whether short-term military leave is comparable to jury duty, sick leave, and other forms of non-military leave for which Defendants have provided wages, salaries, and/or profit sharing to their employees;

(c)     whether USERRA § 4316(b) requires Defendants to provide the same rights and benefits to employees who take short-term military leave as other comparable forms of non-military leave, including pay or salaries and profit sharing awards.

(d)       whether Defendants are and were required by USERRA § 4318 to credit all military service for the purposes of calculating profit sharing awards; and

(e)       whether Defendants' violations of USERRA were willful, such that they should be required to pay liquidated damages to Plaintiff and the members of the proposed Classes.

17.       Because Defendants adopted and applied uniform policies or practices of not paying employees when they take short-term military leave and failing to credit all military service for the purposes of calculating profit sharing awards, answers to these questions will produce common answers for all members of the Class.  As Defendants acted in a uniform, systematic manner with respect to both Classes, all members of each Class suffered the same type of injury based on the same policies or practices, and resolving their claims will be based on common legal and factual questions

18.       Defendants' policy or practice of refusing to pay employees when they take short-term military leave, while paying employees when they take other comparable forms of non-military leave, was applied uniformly to the Paid Leave Class, the issues relating to the relief that Class Members should receive will be common.  Likewise, because Defendants' policy or practice of failing to credit all military service for the purposes of calculating profit sharing awards was applied uniformly to the Profit Sharing Class, the issues relating to the relief Class members should receive will be common.  To the extent that any of these policies or practices are found to violate USERRA, the determination of the amounts to be paid to members of each Class will be formulaic and can be readily calculated pursuant to a common formula.

**Typicality**

19.     Plaintiff's claims are typical of the other members of both Classes, because the claims challenge uniform policies or practices by which Defendants failed to pay employees when they take short-term military leave and failed to credit employees' military service for the purposes of calculating profit sharing awards, while paying employees and crediting their earnings when they take other, comparable forms of leave. In addition, Plaintiff and the Class Members were all injured by the same uniform policies or practices.

**Adequacy**

20.     Plaintiff will fairly and adequately protect the interests of other members of both Classes.

21.     Plaintiff does not have any conflict with any other member of either Class. Plaintiff understands his obligations as a class representative, has already undertaken steps to fulfill them, and is prepared to continue to fulfill his duties as class representative.

22.     Defendants have no unique defenses against the Plaintiff that would interfere with Plaintiff's representation of the Classes.

23.     Plaintiff is represented by counsel with significant experience in prosecuting class action litigation, including class action litigation involving rights and benefits of servicemembers under USERRA.

**Rule 23(b)(1)**

24.     This action can be maintained as a class action under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure. The central questions are whether the uniform policies or practices by which Defendants failed to pay their employees when they take short-term military leave and failing to credit military service for the purposes of calculating profit sharing awards

violates USERRA. As a result, prosecution of separate claims by individual members as to the legality of the same policy would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct.

25. This action can be maintained as a class action under Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure. As a practical matter, resolution of whether Defendants were required under USERRA to pay employees when they take short-term military leave and credit military service for the purposes of calculating profit sharing awards would be dispositive of that matter for other employees even if they were not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Classes.

**Rule 23(b)(2)**

26. This action can also be maintained as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. Defendants have acted and/or failed to act on grounds generally applicable to each Class, making declaratory and injunctive relief appropriate with respect to the Class as a whole.

27. Defendants maintained uniform policies or practices as to all members of each Class. Defendants are alleged to have violated USERRA by refusing to pay employees when they take short-term military leave and/or failing to credit employees' military service for the purposes of calculating profit sharing awards. As such, Defendants have acted or refused to act on grounds that apply generally to the Class. As a result, final declaratory and injunctive relief is appropriate respecting the Class as a whole.

28. The relief sought consists primarily of (a) a declaration establishing that Defendants have violated USERRA by failing to pay employees when they take short-term

military leave and failing to credit military service for the purposes of calculating profit sharing awards, (b) an order requiring Defendants to pay the Paid Leave Class Members the wages or salaries that they should have received during their periods of short-term military leave, consistent with USERRA, and (c) an order requiring Defendants to recalculate and pay the Profit Sharing Class Members the profit sharing awards they would have received had their military leave been credited. The monetary relief sought either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner. Specifically, the amount owed to the Class Members can be calculated by identifying the wages or salaries the Class Members would have received during their periods of short-term military leave, and by identifying the profit sharing awards they would have received had their military leave been credited.

**Rule 23(b)(3)**

29. This action can also be maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, because the questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

30. The common questions of law and fact concern whether Defendants' policies or practices of failing to pay employees when they take short-term military leave and failing to credit military service for the purposes of calculating profit sharing awards violated USERRA. As the Class Members were all employees of Defendants who took military leave and had their compensation or profit sharing reduced by Defendants' violations, common questions related to Defendants' liability will necessarily predominate over any individual questions.

11

31. Because the calculation of Class Members' wages and/or salaries during periods of short-term military leave and proper profit sharing awards can be readily calculated based on their wage and/or salary rates and the relevant profit sharing award calculations, and because the relief primarily consists of a declaration and an order requiring Defendants to pay the Class Members the wages or salaries they are owed and/or the profit sharing awards they are owed consistent with USERRA, common questions as to remedies will predominate over any individual issues.

32. A class action is superior to other available methods for the fair and efficient resolution of this controversy. By resolving the common issues in a single class proceeding, the issues will be efficiently resolved in a single proceeding rather than multiple proceedings. Class certification is a superior method of proceeding here, because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' obligations under USERRA and of the remedy that should be provided under USERRA.

33. Additional factors set forth in Rule 23(b)(3) also support certification.

(a) The members of each Class have an interest in a unitary adjudication of the issues presented in this action for the same reasons why this case should be certified under Rule 23(b)(1). Additionally, many members of the Classes are unlikely to have sufficient damages to justify pursuing an individual action in federal court or obtain counsel to pursue an individual action. But all Class Members would benefit from a class action that obtains relief for all members of the Classes.

(b) No other litigation concerning claims that Defendants should have paid their employees when they take short-term military leave or that Defendants

should have credited employees' military leave for the purposes of calculating

profit sharing awards has been filed by any other members of the Classes.

(c)     This is an appropriate forum for these claims because, among other

reasons, jurisdiction and venue are proper, Chicago is the corporate headquarters

for both Defendants.  As Chicago O'Hare Airport is a hub for United Airlines and

one of its busiest hubs by departures and arrivals, a significant portion of the

Classes work and/or reside in this District.

(d)     There are no difficulties in managing this case as a class action.

## FACTUAL ALLEGATIONS

**Defendants' Policy Regarding Military Leave**

34.     When an employee of Defendants is required to be absent from his or her

employment for one of a number of reasons (unrelated to military leave), including that the

employee is required to perform jury service or has fallen ill, Defendants continue to pay the

employee's wages and/or salary during his or her absence from work.  However, Defendants do

not continue to pay an employee's wages and/or salary when the employee takes short-term

military leave (i.e., military leave that lasts no more than 30 days).

35.     Since at least 2010, and upon information and belief since January 1, 2006,

Defendants have maintained a policy or practice of refusing to pay employees their wages or

salaries when they take short-term military leave, while continuing to pay employees their wages

or salaries when they take other comparable forms of non-military leave, such as jury duty and

sick leave.

**Defendants' Control and Roles In Setting Policy Regarding Wages & Benefits**

36.     UAL is and has been a party to, and is and has been bound by, collective bargaining agreements ("CBAs") that cover the vast majority of employees of UAL and/or Continental Airlines, Inc., including a significant number of the members of the Classes.  For the employees covered by those CBAs, these CBAs establish the wages, benefits, and other terms and conditions of employment for employees, including the wages and benefits of employees when they take short-term and long-term military leave, jury duty leave, and sick leave.

37.     The primary high-level executives of UCH and of UAL have exercised control over the wages and benefits of the employees of UAL and Continental Airlines, Inc. and over the collective bargaining negotiations that set such wages and benefits, including because the UCH executives responsible for such negotiations and execution of such CBAs have had the same positions and roles at both UCH and UAL and/or Continental Airlines, Inc.  For example, UCH and UAL have the same Chief Executive Officer (Oscar Munoz), President (J. Scott Kirby), Executive Vice President and Chief Commercial Officer (Andrew Nocella), Executive Vice President for Human Resources and Labor Relations (Kate Gebo), Executive Vice President and Chief Administrative Officer and General Counsel (Brett Hart), Executive Vice President and Chief Operations Officer (Gregory Hart), and Vice President and Controller (Christopher Kenny), each of whom serves in the same role and function at both UCH and UAL.

38.     The high-level executives who negotiated and/or executed the CBAs with the unions that represent the employees at UAL and Continental Airlines, Inc. have concurrently served as labor relations executives of UCH, UAL, and/or Continental Airlines, Inc.  Executives with high-level or officer positions at UCH signed the CBAs for the following employee groups: Flight Attendants, Fleet Service, Passenger Service, Pilots, Technicians and Related & Flight

Simulator Technicians, Storekeeper Employees, Fleet Tech Instructors, Load Planners, Security Officers, and Maintenance Instructors. By having its high-level executives negotiate and sign the CBAs that cover the employees of UAL and Continental Airlines, Inc., both UCH and UAL had the authority to determine and did determine the terms of employees' wages and benefits, including whether to provide employees their regular wages or salaries when they took short-term military leave, jury duty leave, or sick leave. Through those negotiations by its high-level executives, UCH made the decision not to pay regular wages or salaries of employees who take short-term military leave while providing regular wages or salaries to employees who take jury duty leave or sick leave.

39.     In connection with the collective bargaining agreement ("CBA") between United Airlines, Inc. and the Air Line Pilots Association International, the union that represents the pilots of United Airlines, Inc.—the CBA that that applies to Plaintiff White's wages, benefits, and other terms of employment—Defendant UCH agreed that it is an Affiliate of UAL and that it is bound by Section 1 of the Agreement in the same manner as UAL. By doing so, Defendant UCH has acknowledged that it has control over the wages, benefits, and terms of employment of at least the employees of United Airlines, Inc. and/or Continental Airlines, Inc. who are covered by this CBA.

40.     The First Amendment to the UCH Profit Sharing Plan, which is attached to the Declaration of Lincoln Lounsberry (ECF No. 21-1 in this action) further evidences UCH's role in negotiating the wages and benefits of UAL employees. The First Amendment sets forth that "the Company [defined as UCH in the Amendment] *has reached joint collective bargaining agreements and certain other agreements with various represented employee groups*, necessitating certain changes to [the terms of the Plan]." (emphasis added).

15

41.     The Declaration of Lincoln Lounsberry (ECF No. 21-1) also illustrates that UCH and UAL have overlapping control over wages and benefits that are not negotiated with the unions.  In his declaration, Lounsberry recites that he is an employee of UAL in its Senior Managing Counsel – Benefits.  Even though he is apparently only an employee of UAL and not UCH, he was responsible for drafting and amending the Profit Sharing Plan sponsored by UCH and advising "the company" as to its administration.  As the Profit Sharing Plan provides that UCH has responsibility for administration under the terms of the Profit Sharing Plan, "the company" must at least mean UCH, if not also UAL.

42.     As a party to and by negotiating the employees' CBAs and other agreements covering employees at UAL and Continental Airlines, Inc. and by jointly setting the terms of non-negotiated wages, benefits, and other terms of employment for non-union employees, UCH and UAL through its overlapping high-level executives and officers had the authority to determine and, in fact, did determine whether to provide employees their regular wages or salaries when they took short-term military leave, jury duty leave, or sick leave.

**USERRA Required Defendants to Pay Employees Who Took Short-Term Military Leave, Because They Paid Employees Who Took Other Comparable Forms of Non-Military Leave**

43.     USERRA § 4316(b) provides in relevant part that "a person who is absent from a position of employment by reason of service in the uniformed services shall be"

(A) deemed to be on furlough or leave of absence while performing such service; and

(B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1).

44.     Accordingly, if an employer provides non-seniority rights and benefits to similarly situated employees, including compensation, USERRA § 4316(b) requires the employer to provide the same rights and benefits to employees during their military leave.  *See id*.; 20 C.F.R. § 1002.150(a).

45.     As the USERRA regulations explain, the "most significant factor to compare" two types of leave to determine if they are a "comparable form of leave" is "the duration of the leave."  20 C.F.R. § 1002.150(b).  "[O]ther factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered." *Id*.

46.     Pursuant to their policy and practice of refusing to pay employees their regular wages or salaries during periods of short-term military leave, Defendants failed to pay Plaintiff and the Class Members their regular wages or salaries during each period in which they took short-term military leave.

47.     Upon information and belief, since January 1, 2006, Defendants paid their employees their regular wages or salaries while they were on leave from their employment because of jury duty and sick leave.

48.     Jury duty and sick leave are comparable to short-term military leave in terms of the duration of these forms of leave and in terms of the involuntary nature of the leave.

49.     For Defendants' employees, the duration of jury duty and sick leave is comparable to the duration of short-term military leave.  Each of these types of leaves commonly lasts several days, and usually not more than a couple of weeks.

50.     Like jury duty and sick leave, short-term military leave is ordinarily involuntary. Jury duty is required by federal, state, or local law.  Sick leave occurs due to a short-term, involuntary medical condition that prevents the employee from working.  And short-term

17

military leave occurs due to an employee-servicemember's obligation to perform military service in the Armed Forces.

51.     In addition, the purpose of jury duty is the same as short-term military leave: to perform service for our government and engage in public service for the benefit of our society.

52.     Defendants' policy or practice of refusing to pay employees their wages or salaries when they take short-term military leave, and continuing to pay employees their wages or salaries when they take other comparable forms of non-military leave violates USERRA § 4316(b), because it denies Defendants' employees a non-seniority right or benefit that is provided to similarly situated employees who are on furlough or leave of absence.  38 U.S.C. § 4316(b).

53.     This policy or practice has unlawfully denied Defendants' employees the wages or salaries that they should have received when they engaged in short-term military leave compared to employees who received wages or salaries when they engaged in jury duty, sick leave, or other comparable forms of non-military leave.

**United's Profit Sharing Plan Credits Employees' Non-Military Leave in Making Profit Sharing Awards But Fails to Credit Employees' Comparable Military Leave**

54.     Defendant UCH sponsors the United Continental Holdings, Inc. Profit Sharing Plan ("the Plan") for the benefit of employees of UAL, Continental Airlines, and other Affiliates in which Defendant UCH owns or controls at least an 80% interest.

55.     Many of the terms of the Plan are and have been since January 1, 2016 been set forth in a written document entitled the "United Continental Holdings, Inc. Profit Sharing Plan Amended and Restated Effective January 1, 2016," which is referred to as "the Plan" but for purposes of clarity will be referred to as the 2016 Plan Document.  According to Section VI.C of the 2016 Plan Document, other terms of the Plan are set forth in the Plan Rules, Plan

Administration and collective bargaining agreements. Plaintiff has not been provided with a written copy of the Plan Rules or Plan Administration.

56.     The Plan commenced on January 1, 2006, as the UAL Corporation Success Sharing Program – Profit Sharing Plan, and was amended effective January 1, 2011 and on January 1, 2014. Upon information and belief, the relevant terms of the Plan have not materially changed since 2006.

57.     Section I.A. of the 2016 Plan Document sets forth the "Purpose" of the Plan, which explains that UCH sponsors the Plan "for benefit of certain employees of United Air Lines, Inc., Continental Airlines, Inc. and other participating Affiliates."

58.     Section I.B. of the Plan Document that with respect to "employees covered by a collective bargaining agreement with the Employer (including UAL) pursuant to which the Employer has agreed to provide" such employees "with participation in a profit sharing bonus plan, this Plan is maintained pursuant to [the collective bargaining] agreement." Section 1.E further provides that that with respect to the "employees covered by a collective bargaining agreement with the Employer" the Plan is "subject to termination pursuant to the terms of the collective bargaining agreement." These provisions explain that the Employers (*i.e.*, UAL and Continental Airlines, Inc. and other Affiliates) have delegated to UCH the responsibility to provide profit sharing benefits that these Employers are contractually obligated to provide pursuant to the CBAs. To fulfill that delegated obligation, UCH established, maintains and administers this Profit Sharing Plan, and its Sponsor, UCH, the authority to and role of managing employees' profit sharing benefits.

59.     Section IV.A of the 2016 Plan Document provides that Defendant UCH or its delegate and as to certain matters, the Compensation Committee of the Board of Directors of

UCH (or another committee appointed by the Board of UCH), has authority and responsibility to manage and control the administration of the Plan.

60.     Pursuant to Section III.C.5 of the 2016 Plan Document, UCH has delegated the authority to determine – other than those items specifically listed on Appendix A – whether an item of compensation is included or excluded from the definition of Wages under the Plan to the UCH Executive Vice President – Human Resources and Labor Relations.  From at least December 2010 through December 2017, the Executive Vice President – Human Resources and Labor Relations was Michael P. Bonds. Based on the First Amendment to the Plan, which was signed by Kate Gebo as UCH Executive Vice President – Human Resources and Labor Relations, Gebo succeeded Bonds as UCH Executive Vice President – Human Resources and Labor Relations.

61.     Pursuant to Section I.C and I.F of the 2016 Plan Document, Qualified Employees *(i.e.*, those employees who are qualified to receive profit sharing under the Plan) are Domestic Employees, which means any regular full-time or part-time U.S. employee (and certain international based employees) of United Airlines, Inc., Continental Airlines, Inc., Continental Micronesia, Mileage Plus, Inc., and several other Affiliates in which UCH owns or controls a greater than 80% interest, who have completed a year of service as of December 31 of the year for which profit sharing is awarded.

62.     Section V.A. of the Plan Document provides that "[t]he Plan may at any time be amended, modified, suspended or terminated, as [Defendant UCH] in its sole discretion determines."

63.     Sections III.A and III.B of the 2016 Plan Document provide that if Defendant UCH's pre-tax Profit for a certain year exceeds a threshold—which in the 2016 Plan Document

is $10 million—then Defendant UCH will make profit sharing awards to eligible employees based on a formula that takes into account the "Wages" each employee earned during that year in relation to the total "Wages" of all eligible employees, as well as the employee's occupation or labor group. For example, pilots and flight attendants' Wages are given twice as much weight or credit as the Wages of customer service employees or storekeeper employees.

64.     Section III.C of the 2016 Plan Document sets forth what compensation is included in the term "Wages," and Appendix A-1 sets forth a list of certain compensation that is specifically included in the definition of "Wages" under the Plan.  Appendix A-2 sets forth a list of certain compensation that is specifically excluded from the definition of "Wages" under the Plan. While neither jury duty nor military leave is specifically addressed in the 2016 Plan Document, given the longstanding practice by UCH of crediting jury duty leave as "Wages" under the Plan (and paying employees who take jury duty), but not crediting military leave, and based on the procedures and practices of UCH, the practices under the Plan constitute UCH policy since at least 2006.

65.     Pursuant to Section III.C.1 and III.C.2 of the Plan and Appendix A, Wages under the Plan include the compensation that employees receive when they take non-military leaves of absence such as sick leave and other circumstances in which they are not working, such as holidays and vacation.  Appendix A does not mention either compensation for jury duty leave or the compensation that employees would have earned had they not taken military leave.

66.     Pursuant to the formula under the Plan (as set forth in Section III), the higher amount of Wages that a Qualified Employee receives credit for under the Plan, the higher his or her profit sharing award will be in a year in which profit sharing awards are made, and the higher

his or her share of all employees' profit sharing awards will be, regardless of the employee's occupation or labor group.

67.     From the inception of the Plan to the present, the Plan has not credited employees' military service when determining the Wages of Qualified Employees who take military leave for the purposes of calculating profit sharing awards. As a result, Qualified Employees who have taken military leave from Defendants have been denied credit for all of their military service when profit sharing awards under the Plan have been calculated and paid since 2006.  In addition, because Defendants have not paid employees who took short-term military leave when they paid employees to took comparable forms of non-military leave, as required by USERRA § 4316(b), Qualified Employees were not credited any Wages for the purpose of calculating their profit sharing awards when they took short-term military leave.

68.     Other major airlines in the United States, such as Southwest Airlines and Delta Airlines, credit employees' military leave for the purposes of calculating their employees' profit sharing awards.

69.     Pursuant to Section III.D. of the 2016 Plan Document, Qualified Employees receive profit sharing awards no later than March 15 or as soon as practicable thereafter following a year in which qualified employees are entitled to receive profit sharing awards.

70.     Pursuant to Section III.E. of the 2016 Plan Document, Qualified Employees who receive profit sharing awards may elect to receive a cash payment or contribute their profit sharing award into an employer-sponsored 401(k) plan in which the employee is eligible to participate.

71.     Qualified Employees received profit sharing awards for the following years: 2006, 2010, 2011, 2012, 2013, 2014, 2015, 2016, and 2017.  Qualified Employees who took

military leave during these years would have received greater profit sharing awards in such years if their military leave been credited for the purposes of calculating their profit sharing awards.

**Plaintiff's USERRA-Protected Military Leave & Awards Under the Plan**

72.     Since his employment with Defendants began in 2005, Plaintiff took dozens of periods of short-term military leave of 30 days or less that qualified as service in the uniformed services within the meaning of USERRA, 38 U.S.C. § 4303(13), including in the following years: 2006, 2007, 2010, 2011, 2012, 2013, 20414, 2015, 2016, 2017, and 2018.  In addition, Plaintiff took a number of long term periods of military leave since 2005.

73.     For the times that Plaintiff took military leave, including short-term military leave, Defendants did not pay Plaintiff his regular wages.

74.     For the times that Plaintiff took short-term military leave and long-term military leave, Defendants did not credit any of Plaintiff's periods of military leave in calculating his profit sharing awards in the years in which he and other employees received profit sharing awards.

75.     Plaintiff was a Qualified Employee in the Plan and received a profit sharing award in 2011, 2012, 2013, 2014, 2015, 2016, and 2017.  Had Plaintiff's military leave, including short-term military leave, had been credited for the purposes of calculating his profit sharing award, Plaintiff's profit sharing award would have been greater than it was in such years.

## COUNT I
**VIOLATION OF USERRA, 38 U.S.C. § 4316(b)(1), AGAINST DEFENDANTS**
**(For Failure to Pay Wages or Salaries During Periods of Short-Term Military Leave)**
**On Behalf of the Paid Leave Class**

76.     Plaintiff hereby repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

77.     USERRA, 38 U.S.C. § 4316(b)(1), provides that "a person who is absent from a position of employment by reason of service in the uniformed services shall be (A) deemed to be on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service."

78.     The U.S. Department of Labor's regulations, which implement and interpret USERRA § 4316(b)(1), provide that "[i]f the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services."  20 C.F.R. § 1002.150(b).  Under these regulations, the "duration of leave" "may be the most significant factor" to determine whether two forms of leave are comparable, and other relevant factors include "the purpose of the leave and the ability of the employee to choose when to take the leave."  *Id.*

79.     As described above, Defendants have maintained a policy or practice of failing to pay employees their wages or salaries when they take short-term military leave, while continuing to pay employees their wages or salaries when they take other comparable forms of non-military leave, such as jury duty and sick leave.

80. As described above, jury duty leave and sick leave are comparable to short-term military leave in terms of the duration, purpose, and/or the ability of the employee to determine whether to take the leave.

81. By adopting and applying a policy or practice of failing to pay the Paid Leave Class Members when they take short-term military leave, Defendants denied Plaintiff and the Paid Leave Class Members the same rights and benefits, including compensation, that Defendants provided to employees who took comparable forms of non-military leave, including jury duty leave and sick leave, and thus failed to provide the Paid Leave Class Members the most favorable treatment accorded to employees who took other comparable forms of non-military leave. By doing so, Defendants violated and continues to violate USERRA § 4316(b)(1).

82. Due to Defendants' failure to comply with USERRA § 4316(b)(1), Plaintiff and other members of the Paid Leave Class received lower wages, salaries, and/or compensation than they would have received had Defendants complied with USERRA and the Department of Labor's implementing regulations.

83. Upon information and belief, Defendants' violation of USERRA § 4316(b)(1) was willful. Accordingly, Defendants should be required to pay liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

### COUNT II
**VIOLATION OF USERRA, 38 U.S.C. § 4316(b)(1), AGAINST DEFENDANTS**
**(For Failure to Credit Short-Term Military Leave in Calculating Profit Sharing Awards)**
**On Behalf of the Profit Sharing Class**

84. Plaintiff hereby repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

85. USERRA, 38 U.S.C. § 4316(b)(1), provides that "a person who is absent from a position of employment by reason of service in the uniformed services shall be (A) deemed to be

on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service."

86.     The U.S. Department of Labor's regulations, which implement and interpret USERRA § 4316(b)(1), provide that "[i]f the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services."  20 C.F.R. § 1002.150(b).  Under the Regulations, the "duration of leave" "may be the most significant factor" to determine whether two forms of leave are comparable, and other relevant factors include "the purpose of the leave and the ability of the employee to choose when to take the leave."  20 C.F.R. § 1002.150(b).

87.     As described above, Defendants UCH and UAL have maintained a policy or practice of failing to credit employees' short-term military leave when calculating their profit sharing awards, while crediting employees' comparable forms of non-military leave, such as jury duty and sick leave, when calculating their profit sharing awards.

88.     As described above, jury duty leave and sick leave are comparable to short term military leave in terms of the duration, purpose, and/or the ability of the employee to determine whether to take the leave.

89.     By adopting and applying a policy or practice of failing to credit employees' short-term military leave when calculating their profit sharing awards while crediting employees' comparable forms of non-military leave, such as jury duty and sick leave, when calculating their

profit sharing awards, Defendants failed to provide Plaintiff and the Profit Sharing Class Members who took short-term military leave the most favorable treatment accorded to employees who took other comparable forms of non-military leave. By doing so, Defendants violated and continues to violate USERRA § 4316(b)(1).

90.     Due to Defendants' failure to comply with USERRA § 4316(b)(1), Plaintiff and other members of the Profit Sharing Class received lower profit sharing awards than they would have received had Defendants complied with USERRA and the Department of Labor's implementing regulations.

91.     Upon information and belief, Defendants' violation of USERRA § 4316(b)(1) was willful. Accordingly, Defendants should be required to pay liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

<u>**COUNT III**</u>
**VIOLATION OF USERRA, 38 U.S.C. § 4318, AGAINST DEFENDANTS**
**(For Failure to Credit All Military Leave in Calculating Profit Sharing Awards)**
**On Behalf of the Profit Sharing Class**

92.     Plaintiff hereby repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

93.     USERRA § 4318 applies to both ERISA plans and non-ERISA plans. USERRA § 4318(a)(1)(A) provides that USERRA applies to "an employee pension benefit plan," which includes a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2), but also expressly states that § 4318 applies to pension plans that are not covered by ERISA.

94.     The Department of Labor's regulations, 20 C.F.R. § 1002.260(a), likewise explain that while all ERISA-covered pension plans are covered by USERRA, "USERRA covers certain pension plans not covered by ERISA."

27

95.     Section I.C. of the 2016 Plan Document asserts that the Plan "is not intended to be

. . . an employee benefit plan within the meaning of ERISA."  Not only is a statement of whether

a Plan is intended to be covered by ERISA irrelevant to whether a plan is covered by ERISA, but

nothing in the 2016 Plan attempts to disclaim coverage as a pension plan under USERRA §

4318.

96.     The Plan is an employee benefit pension plan under USERRA, 38 U.S.C. § 4318,

because, among other things, the Plan permits employees to designate an amount of their profit

sharing awards that will be paid to their retirement plans and thereby defer their profit sharing

awards until the termination of their employment and/or have the awards paid as retirement

income.

97.     Under USERRA § 4318(a)(2)(B), an employee's service in the uniformed service

will be deemed to constitute service with the employer for purposes of determining the accrual of

benefits under a pension plan.

98.     The Department of Labor's regulations require that "[o]n reemployment,

the employee [be] treated as not having a break in service with the employer or the employers

maintaining a pension plan, for purposes of participation, vesting and accrual of benefits, by

reason of the period of absence from employment due to or necessitated by service in the

uniformed services."  20 C.F.R. § 1002.259.

99.     Pursuant to USERRA, 38 U.S.C. § 4318(b)(1), an employer reemploying a person

after a period of service in the uniformed services is liable to the employee benefit pension plan

for funding any obligation of the plan to provide benefits, including those accrued under

USERRA § 4318(a)(2)(B).

100.    For the purposes of computing an employer's liability under USERRA 38 U.S.C. § 4318(b), the employee's compensation during the period of service described in § 4318 (a)(2)(B) shall be computed either (A) at the rate the employee would have received but for the period of service described in Section 4318(a)(2)(B), or (B) in the case that the determination of such rate is not reasonably certain, on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period).

101.    Defendants adopted a policy that did not treat any service of employees who took leave in the uniformed service as service with an Employer under the Plan.

102.    By failing to treat the service of employees who took short-term miltiary leave or long-term military leave as service under the Plan, Defendants UCH and UAL violated and continue to violate USERRA § 4318.

103.    As a result of Defendants UCH and UAL's failure to comply with USERRA § 4318, Plaintiff and other members of the Profit Sharing Class received profit sharing awards that were smaller than what they would have received had Defendants complied with USERRA.  In addition, Plaintiff and other members of the Profit Sharing Class were unable to use the profit sharing awards that should have been allocated to them to contribute those awards into their tax-qualified retirement plans.

104.    Upon information and belief, Defendants' violation of USERRA § 4318 was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and respectfully requests that this Court award the following relief:

A.      Declare that Defendants' policies or practices of failing to pay their employees' regular wages, salaries, or compensation during periods of short-term military leave, while providing pay to employees when they took other comparable forms of non-military leave, and failing to credit employees' short-term military leave for the purposes of calculating profit sharing awards, while crediting employees' comparable forms of non-military leave, violated the rights of Plaintiff and the Class under USERRA § 4316(b);

B.      Declare that Defendants' failure to credit employees' short-term military leave and long-term military leave for the purposes of calculating profit sharing awards violated USERRA § 4318.

C.      Declare that Defendants' violations of USERRA were willful under 38 U.S.C. § 4323(d)(1)(C).

D.      Declare that Defendants must pay their employees' regular compensation during periods of short-term military leave and credit employees' periods of short-term military leave for the purposes of calculating profit sharing awards.

E.      Require Defendants to comply with USERRA § 4316 by paying Plaintiff and the Class Members their regular wages, salaries, and/or compensation during periods of short-term military leave in the future, and crediting employees' periods of short-term military leave for the purposes of calculating profit sharing awards in the future.

F.      Require Defendants to comply with USERRA § 4318 by crediting all periods of military leave for the purposes of calculating profit sharing awards in the future.

G.      Require Defendants to pay Plaintiff and the Class Members the wages, salaries, and/or compensation they should have received for periods of short-term military leave in accordance with the Court's declaration, or at a minimum to pay Plaintiff and the Class Members

the difference between the wages, salaries, and/or compensation they should have received for periods of short-term military leave and the payments that Plaintiff and the Class Members received from the Armed Forces for their military service during such short-term military leave periods.

H.      Require Defendants to recalculate the profit sharing awards that Plaintiff and the Class Members should have received under the Plan in accordance with the Court's declaration;

I.      Order Defendants to pay all members of the Class liquidated damages in an amount to be determined at trial, 38 U.S.C. § 4323(d)(1)(C).

J.      Award pre-judgment and post-judgment interest on any monetary relief awarded or required by order of this Court.

K.      Require Defendants to pay attorneys' fees, expert witness fees, litigation expenses and costs pursuant to 38 U.S.C. § 4323(h) and/or order the payment of reasonable fees and expenses in this action to Plaintiff's Counsel based on the common benefit and/or common fund doctrine out of any money or benefit recovered for the Class in this Action.

L.      Grant such other and further relief as the Court deems proper, just and/or equitable.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure or any similar rule or law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

Dated: March 29, 2019      Respectfully submitted,

              */ s / Peter Romer-Friedman*
              Peter Romer-Friedman (Admitted to N.D. Ill.)
              Outten & Golden LLP
              601 Massachusetts Avenue NW
              Second Floor West
              Washington, DC 20001
              Tel: (202) 847-4400
              Email: prf@outtengolden.com

              Paul W. Mollica (Admitted to N.D. Ill.)
              Outten & Golden LLP
              161 North Clark Street
              Suite 1600
              Chicago, IL 60601
              Tel: (312) 809-7010
              Email: pwmollica@outtengolden.com

              R. Joseph Barton (Admitted to N.D. Ill.)
              Block & Leviton LLP
              1735 20th Street NW
              Washington, DC 20009
              Tel: (202) 734-7046
              Fax: (617) 507-6020
              Email: jbarton@blockesq.com

              Thomas G. Jarrard (Admitted to N.D. Ill.*)*
              Law Office of Thomas G. Jarrard LLC
              1020 N. Washington Street
              Spokane, WA 99201
              Tel: (425) 239-7290
              Fax: (509) 326-2932
              Email: tjarrard@att.net

              Matthew Z. Crotty (*Pro hac vice* motion pending)
              Crotty & Son Law Firm, PLLC
              905 W. Riverside Avenue
              Suite 404
              Spokane, WA 99201
              Tel: (509) 850-7011
              Email: matt@crottyandson.com

              *Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I, Peter Romer-Friedman, an attorney, hereby certify that on March 29, 2019, I filed the

foregoing *Amended Class Action Complaint* via the Court's CM/ECF system, which

caused a copy of the same to be served upon all counsel of record via ECF.


*/s/ Peter Romer-Friedman*
Peter Romer-Friedman