**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ERIC WHITE, on behalf of himself and all others similarly situated,** | **Case No. 19-cv-00114** |
| **Plaintiff,** | **PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANTS UNITED AIRLINES, INC. AND UNITED CONTINENTAL HOLDINGS, INC. TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| **v.** | |
| **UNITED AIRLINES, INC. and UNITED CONTINENTAL HOLDINGS, INC.,** | |
| **Defendants.** | |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ALLEGATIONS OF THE COMPLAINT.......................................................... 1

STANDARD OF REVIEW ................................................................................ 2

ARGUMENT ..................................................................................................... 3

I.  Count I States a Claim Under USERRA § 4316(b) for Failing to Provide Employees on Short-Term Military Leave with Comparable Rights and Benefits............................. 3

    A.  USERRA's Text Broadly Defines the "Rights and Benefits" That Must Be Provided Equally to Cover Wages When No Work Is Performed......................... 4

    B.  USERRA's Legislative History and the Case Law Preceding USERRA § 4316(b)'s Equality Rule Require the Same Conclusion ..................................... 8

    C.  Courts Interpreting § 4316(b) and § 4303(2) Have Held Employees Must Be Paid for Military Leave When the Employer Pays for Comparable Leave .......... 11

    D.  Any Ambiguity Must Be Construed in Favor of the Servicemember ................. 11

    E.  A Proper Interpretation of USERRA § 4316(b) Will Not Impose a General or Absolute Mandate on Employers to Provide Paid Military Leave ...................... 12

    F.  The Consequences of Applying § 4316(b) As Written Will Be Minimal, But Cannot Override the Statute That Congress Enacted to Protect Reservists.......... 14

II.  UCH is an Employer Under USERRA § 4303(4) with Respect to Count I .................... 15

III.  Count II Properly Alleges a USERRA§ 4316(b) for Denial of Profit-Sharing Credit ..... 17

IV.  Count III Properly Alleges a Claim Under USERRA § 4318 ......................................... 19

    A.  Count II Sufficiently Alleges That the Profit-Sharing Plan Is a Pension Plan Under USERRA § 4318 Regardless of Whether It is An ERISA Pension Plan... 19

    B.  The Complaint Sufficiently Alleges That the Profit-Sharing Plan Meets the Definition of a Pension Plan Under ERISA § 3(2)............................................... 21

    C.  The DOL Regulatory Bonus Plan Exemption Does Not Apply to USERRA, But Even if It Did, the Plan Is Not a Bonus Plan Exempt from ERISA.............. 23

CONCLUSION.................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     **Page(s)**

*Anderson v. UNUM Provident Corp.*,
   369 F.3d 1257 (11th Cir. 2004) ...................................................................................25

*In re Baker*,
   114 F.3d 636 (7th Cir. 1997) .....................................................................................22

*Bass v. Mid–America Co., Inc.*,
   No. 95 Civ. 1167, 1995 WL 622397 (N.D. Ill. Oct. 20, 1995).................................24

*Benetiz v. Montebello*,
   No. 09 Civ. 0303, 2010 WL 3814374 (C.D. Cal. Sept. 27, 2010)...........................18

*Boucher v. Fin. Sys. of Green Bay, Inc.*,
   880 F.3d 362 (7th Cir. 2018) ......................................................................................2

*Boyle v. United States*,
   556 U.S. 938 (2009)................................................................................................5-6

*Brill v. AK Steel Corp.*,
   No. 09 Civ. 534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012) ........................3-4, 11, 13, 14

*Brown v. Gardner*,
   513 U.S. 115 (1994)................................................................................................12

*Buckley v. Peak6 Invs., LP*,
   827 F. Supp. 2d 846 (N.D. Ill. 2011) .....................................................................12

*Carter v. Siemens Bus. Servs., LLC*,
   No. 10 Civ. 1000, 2010 WL 3522949 (N.D. Ill. Sept. 2, 2010)...........................16-17

*Crews v. City of Mt. Vernon*,
   567 F.3d 860 (7th Cir. 2009) ...........................................................................4, 10, 11

*Custer v. Lincoln Nat'l Life Ins. Co. of Ft. Wayne, Ind.*,
   141 F.2d 144 (7th Cir. 1944) .....................................................................................6

*Dahlstrom v. Sun-Times Media, LLC*,
   777 F.3d 937 (7th Cir. 2015) .....................................................................................7

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ...................................................................................23

*Darby v. C. I. Comm'r*,
   97 T.C. 51 (Tax Ct. 1991)........................................................................................22

*Davis v. Advocate Health Ctr. Patient Care Exp.*,
    523 F.3d 681 (7th Cir. 2008) ...........................................................................11

*Donovan v. Anheuser-Busch, Inc.*,
    666 F.2d 315 (8th Cir. 1981) .............................................................................20

*Duffer v. United Cont'l Holdings, Inc.*,
    173 F. Supp. 3d 689 (N.D. Ill. 2016) ........................................................4, 11, 13

*Duncan v. Tyco Fire Prods., LP*,
    No. 16 Civ. 916, 2018 WL 3303305 (N.D. Ala. July 5, 2018)................................13

*Emmenegger v. Bull Moose Tube Co.*,
    197 F.3d 929 (8th Cir. 1999) .......................................................................22, 25

*Fishgold v. Sullivan Drydock & Repair Corp.*,
    328 U.S. 275 (1946)..........................................................................................11

*Freund v. Marshall & Ilsley Bank*,
    485 F. Supp. 629 (W.D. Wis. 1979) ...................................................................23

*Gagnon v. Sprint Corp.*,
    284 F.3d 839 (8th Cir. 2002) ..............................................................................7

*Goodrich v. CML Fiberoptics*,
    990 F. Supp. 48 (D. Mass. 1998) .......................................................................23

*Greenlaw v. United States*,
    554 U.S. 237 (2008)............................................................................................6

*Gross v. PPG Indus.*,
    636 F.3d 884 (7th Cir. 2011) .........................................................................8, 13

*Holansky v. Prudential Fin.*,
    No. 02 Civ. 4820, 2004 WL 1404016 (N.D. Ill. June 21, 2004) ............................22

*Holzer v. Prudential Eq. Grp. LLC*,
    458 F. Supp. 2d 587 (N.D. Ill. 2006) ..................................................................25

*Int'l Paper Co. v. Suwyn*,
    978 F. Supp. 506 (S.D.N.Y. 1997).....................................................................23

*Kaelin v. Tenneco, Inc.*,
    28 F. Supp. 2d 478 (N.D. Ill. 1998) ...................................................................23

*Keach v. U.S. Tr. Co.*,
    419 F.3d 626 (7th Cir. 2005) .............................................................................24

*Keeley v. Loomis Fargo & Co.*,
    183 F.3d 257 (3d Cir. 1999) ........................................................................6

*Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*,
    95 F. Supp. 3d 402 (S.D.N.Y. 2015) .........................................................25

*Lapine v. Wellesley*,
    304 F.3d 90 (1st Cir. 2002) .........................................................................8

*Levin v. Madigan*,
    697 F. Supp. 2d 958 (N.D. Ill. 2010) ........................................................14

*Martin v. Hamil*,
    608 F.2d 725 (7th Cir. 1979) .......................................................................6

*McCann v. Unum Provident*,
    907 F.3d 130 (3d Cir. 2018) ......................................................................24

*McDaniel v. Loyola Univ. Med. Ctr.*,
    No. 13 Civ. 06500, 2014 WL 4269126 (N.D. Ill. Aug. 28, 2014) ............16

*Meredith v. Time Ins. Co.*,
    980 F.2d 352 (5th Cir. 1993) .....................................................................25

*Miller v. City of Indianapolis*,
    281 F.3d 648 (7th Cir. 2002) ...........................................................12, 13, 14

*Modzelewski v. Resolution Tr. Corp.*,
    14 F.3d 1374 (9th Cir. 1994) .....................................................................24

*Monroe v. Standard Oil Co.*,
    452 U.S. 549 (1981) ...................................................................................10

*Oatway v. Am. Int'l Grp.. Inc.*,
    325 F.3d 184 (3d Cir. 2003) ......................................................................23

*Pate v. MetoKote Corp.*,
    No. 11 Civ. 209, 2012 WL 5493865 (S.D. Ohio Nov. 13, 2012) .............17

*Raypole v. Chemi-Trol Chem. Co., Inc.*,
    754 F.2d 169 (6th Cir. 1985) .....................................................................21

*Rich v. Shrader*,
    No. 09 Civ. 0652, 2011 WL 4434852 (S.D. Cal. Sept. 22, 2011) ............22

*Richardson v. Nat'l City Bank of Evansville*,
    141 F.3d 1228 (7th Cir. 1998) .....................................................................5

*Rogers v. City of San Antonio*,
    392 F.3d 758 (5th Cir. 2004) ...................................................................10

*Sebelius v. Cloer*,
    569 U.S. 369 (2013)...............................................................................15

*Strzelecki v. Schwarz Paper Co.*,
    824 F. Supp. 821 (N.D. Ill. 1993) ...........................................................23

*Temores v. Cowen*,
    289 F. Supp. 2d 996 (N.D. Ill. 2003) ......................................................20

*Tolbert v. RBC Capital Mkts. Corp.*,
    758 F.3d 619 (5th Cir. 2014) .............................................................22, 25

*United States v. Godoy*,
    706 F.3d 493 (D.C. Cir. 2013)................................................................20

*U.S. ex rel. Reilly v. New Eng. Teamsters & Trucking Indus. Pension Fund*,
    737 F.2d 1274 (2d Cir. 1984)..................................................................21

*Waltermyer v. Aluminum Co. of Am.*,
    804 F.2d 821 (3d Cir. 1986)............................................................ *passim*

**Statutes**

5 U.S.C. § 6323 ..........................................................................................14

29 U.S.C. § 1002(2) ..................................................................19, 21, 22, 23

38 U.S.C. § 4301 .......................................................................................3, 15

38 U.S.C. § 4302(a) ....................................................................................14

38 U.S.C. § 4303 ................................................................................ *passim*

38 U.S.C. § 4316(b) ........................................................................... *passim*

38 U.S.C. § 4318 ....................................................................................21, 23

45 U.S.C. § 184...........................................................................................15

735 Ill. Comp. Stat. Ann. 5/12-1006(b) ......................................................21

**Administrative Materials**

20 C.F.R. § 1002.260 ..................................................................................20

29 C.F.R. § 2510.3–2 ............................................................................23, 24, 25

70 Fed. Reg. 75,246, 75262-64 (Dec. 19, 2005)......................................................13

70 Fed. Reg. at 75276-01, 75279-80,
    2005 WL 3451172 .................................................................................................20

Bureau of Labor Statistics, Employer Costs for Employee Compensation,
    https://www.bls.gov/ news.release/pdf/ecec.pdf........................................................5

Bureau of Labor Statistics, Employment Situation Summary Table A. Household
    data, seasonally adjusted (May 3, 2019),
    https://www.bls.gov/news.release/empsit.a.htm ....................................................15

Dep't of Labor, *News Release* USDL 96-394,
    1996 WL 538255 (Sept. 18, 1996)........................................................................20

IRS Notice 2010-15, 2010-6 I.R.B. 390,
    2010 WL 177753, (Feb. 8, 2010).........................................................................20

IRS Publication 15, (Circular E) Employer's Tax Guide at 15 (Dec. 17, 2018),
    https://www.irs.gov/pub/irs-pdf/p15.pdf ...............................................................6

IRS Publication 4128, Tax Impact of Job Loss at 1-2 (2015),
    https://www.irs.gov/pub/irs-pdf/p4128.pdf ...........................................................6

Pub. L. No. 111-275, § 701(a) (2010)............................................................... 7, 8

**Legislative History**

156 Cong. Rec. S7656-02 (Sept. 28, 2010) ...........................................................5, 8

H.R. Rep. No. 103-65 (1993)............................................................... *passim*

S. Rep. No. 103-158 (1993)............................................................6, 8, 21

**Other Authorities**

Demographics: Profile of the Military Community 59 (2016),
    https://download.militaryonesource.mil/12038/MOS/Reports/2016-
    Demographics-Report.pdf...................................................................................15

Dep't of Defense, 2016 Demographics: Profile of the Military Community 59 (2016),
    https://download.militaryonesource.mil/12038/MOS/Reports/2016-
    Demographics-Report.pdf...................................................................................15

Kathryn Piscitelli & Edward Still, The USERRA Manual § 3:5 Pay (2018) ...............14

Webster's New World Dictionary 18 (1994)..............................................................5

Webster's Ninth New Collegiate Dictionary 939 (1986) ............................................5

## INTRODUCTION

This suit alleges violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") against United Airlines, Inc. ("UAL") and United Continental Holdings, Inc. ("UCH") (collectively, "United") for failing to pay employees when they take short-term military leave, even though United pays employees who take other comparable forms of leave, and for failing to credit military leave under the UCH Global Profit-Sharing Plan.

USERRA obligates employers to provide reservists on military leave the same rights and benefits that other employees receive when they take comparable forms of leave. United argues that the Complaint seeks to impose a general mandate for employers to pay all reservists for military leave, and that "rights and benefits" owed under USERRA § 4316(b) do not include paid leave. But United's argument contradicts the text, legislative history, case law, and proper interpretation of USERRA. United also argues that the profit-sharing plan is not a pension plan under USERRA, because it meets an exemption limited only to ERISA. This fails to recognize that USERRA defines pension plans more broadly than ERISA. United also has not met its burden to show this Plan meets the ERISA exemption. The Complaint has alleged sufficient facts supporting all three USERRA claims. Thus, United's motion to dismiss should be denied.

## ALLEGATIONS OF THE COMPLAINT

Eric White is a pilot for UAL and for the United States Air Force Reserve. Amended Complaint (ECF No. 27) ("Compl.") ¶ 9. During his employment, White has taken leave to perform his military reserve duties. *Id*. The Complaint alleges three claims on behalf of two classes. *Id*. ¶¶ 3-6. Count I alleges that UAL and UCH violated USERRA § 4316(b) by paying employees who take comparable forms of non-military leave but failing to pay employees who take short-term military leave. *Id.* ¶¶ 76-83. United does not dispute that the Complaint

sufficiently alleges that short-term military leave is comparable to jury duty and sick leave, which are short-term, involuntary, and (in the case of jury duty) taken for a public purpose. Nor does it dispute that employees who take jury duty or sick leave receive regular pay, but that employees do not receive pay when they take short-term military leave. *See id.* ¶¶ 46-51.

Count II and IIII allege USERRA violations by UAL and UCH regarding how military leave is treated by the UCH Global Profit-Sharing Plan. *Id.* ¶¶ 84-91, 92-104. Under the Plan, UCH is obligated to pay profit-sharing awards to many of its employees based on a formula that takes into account their credited wages (and not their individual performance). *Id.* ¶¶ 63-64. When calculating benefits under the Plan, the Plan credits participants who take jury duty leave with wages for those leaves, but does not credit participants who take military leave with such wages. *Id.* ¶¶ 65, 67. Count II alleges that this practice violated USERRA § 4316(b)(1), as it denies the same "rights and benefits" to employees who take military leave that are given to employees who take comparable leave. *Id.* ¶¶ 89-90. Count III alleges that the Plan is a pension plan under USERRA and the failure to credit participants for periods of military leave violated 38 U.S.C. § 4318, which requires that periods of military leave must be deemed service with the employer for the purposes of determining benefits under a pension plan. *Id.* ¶¶ 101-103.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face," which occurs when the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc*., 880 F.3d 362, 365-66 (7th Cir. 2018) (internal quotation marks omitted).

**ARGUMENT**

I.      **Count I States a Claim Under USERRA § 4316(b) for Failing to Provide Employees on Short-Term Military Leave with Comparable Rights and Benefits.**

Count I alleges that United violated USERRA § 4316(b) by failing to pay employees when they take short-term military leave, but paying wages or salaries to employees who take comparable non-military leave. Compl. ¶¶ 79-81. By paying employees who take comparable leave, but not those on short-term military leave, United failed to offer the same "rights and benefits" that United provides "to employees having similar seniority, status, and pay who are on . . . leave of absence." *Id.* ¶¶ 77-81 (quoting 38 U.S.C. §4316(b)(1)). United argues that the "rights and benefits" in § 4316(b) do not extend to pay or wages. Def.'s Mem. 6-13. But this ignores USERRA's text, history, and caselaw.

For decades, USERRA and its predecessor law have advanced a key goal of "eliminating or minimizing the disadvantages to civilian careers" from military service. 38 U.S.C. § 4301(a)(1). When employees take military leave, they are entitled to the same "rights and benefits" other employees get when they take non-military leave. *Id.* § 4316(b)(1)(B); *Waltermyer v. Aluminum Co. of Am.*, 804 F.2d 821, 824-26 (3d Cir. 1986) (holding employees on military leave had the same rights to holiday pay as workers, such as those on jury duty, whose absence is involuntary). This equality principle in *Waltermyer* was codified when Congress enacted USERRA § 4316(b) and § 4303(2). H.R. Rep. No. 103-65, at 18, 33-34 (1993) ("House Rpt.") ("affirm[ing] the decision in *Waltermyer*" that persons on military leave receive "the most favorable treatment accorded any particular leave").

Based on the text of § 4316(b) and § 4303(2) and history, courts have held that the "rights and benefits" that must be given equally to employees on military leave are expansive and include pay when employees who take other comparable leave get paid. *Brill v. AK Steel Corp.*,

No. 09 Civ. 534, 2012 WL 893902, at *6 (S.D. Ohio Mar. 14, 2012); *Duffer v. United Cont'l Holdings, Inc.*, 173 F. Supp. 3d 689, 704 (N.D. Ill. 2016). Rather than imposing an absolute mandate to pay employees whenever they take military leave, § 4316(b) merely establishes that an employer must pay for military leave if it pays employees who take comparable leaves.

As the Seventh Circuit has held, § 4316(b) mandates *equal treatment* for reservists on military leave vis-à-vis other employees on comparable leave, *not preferential treatment*. *Crews v. City of Mt. Vernon*, 567 F.3d 860, 867-68 (7th Cir. 2009). Here, Plaintiff only seeks equal, not preferential, treatment for reservists compared to other employees who are paid when they take non-military leaves. Following § 4316(b)'s equality rule for reservists will have a minor impact on employers, as less than 1% of American workers are reservists. But it will advance USERRA's overriding purpose of minimizing disadvantages of military service for reservists.

### A. USERRA's Text Broadly Defines the "Rights and Benefits" That Must Be Provided Equally to Cover Wages When No Work Is Performed.

The text of § 4316(b) and § 4303(2) provide that the "rights and benefits" that must be given equally to those on military duty and other leaves include wages when employees perform no work. United attempts to evade this conclusion by focusing exclusively on *seven words* in a 91-word definition of "wages and benefits" and by assuming that a 2010 amendment designed *to expand* § 4303(2) implicitly gutted key "rights and benefits" that existed for decades. Section 4303(2) currently provides as follows:

> The term "benefit", "benefit of employment", or "rights and benefits" means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2). Before 2010, the parenthetical "(**including** wages or salary for work

4

performed)" read "(**other than** wages or salary for work performed)," *id.* § 4303(2) (1995). In 2010, Congress amended § 4303(2) "to make it clear that wage discrimination is not permitted under USERRA." 156 Cong. Rec. S7656-02, S7663 (Sept. 28, 2010). Thus, before 2010 "wages or salary for work performed" were excluded from § 4303(2), but now are expressly included. Under either iteration, wages for work *not performed are within "rights and benefits."*

Understanding the parenthetical phrases, and why they *do cover wages when no work is performed*, requires examining the surrounding words. Section 4303(2) defines "rights and benefits" expansively. Currently, it covers "the terms, conditions, or privileges of employment" *without any exception* and uses the words *including* or *includes* three times in front of 19 separate things that illustrate its breadth. *See Richardson v. Nat'l City Bank of Evansville*, 141 F.3d 1228, 1232 (7th Cir. 1998) ("Include' is a word of illustration, not limitation."). Indeed, § 4303(2) contains very broad *general illustrations* of "rights and benefits" – "*any advantage, profit, privilege, gain*" – all of which describe wages, salaries, or other compensation.[1]

For example, wages are the main "advantage" of a job and are how employees "gain" from a job. *See* Bureau of Labor Statistics, Employer Costs for Employee Compensation, https://www.bls.gov/news.release/pdf/ecec.pdf ("Wages and salaries . . . accounted for 68.6 percent of [costs for employee compensation]"). Employees "profit" from jobs by receiving wages. It makes no sense to read "*any* advantage, profit, privilege, gain," 38 U.S.C. § 4303(2), to exclude the greatest form of advantage, profit, or gain employees receive. And "[t]he term 'any'" before these illustrations "ensures that the definition has a wide reach." *Boyle v. United*

---

[1] Webster's Ninth New Collegiate Dictionary 939 (1986) ("Profit" is "a valuable return; gain" or "net income usu. for a given period of time"); *id.* at 502 ("Gain" is "resources or advantaged acquired or increased," "act or process of gaining," or "an increase in amount, magnitude or degree"); Webster's New World Dictionary 18 (1994) ("advantage" is "favorable or beneficial circumstance" or "gain or benefit").

*States*, 556 U.S. 938, 944 (2009).

Section 4303(2) contains even *more specific illustrations* of "rights and benefits" that describe compensation employees often get *when they do not perform work*, like "severance pay, supplemental unemployment benefits, vacations." *Id.*[2]  To conclude that § 4303(2) does not cover wages for work not performed is inconsistent with § 4303(2)'s specific examples of wages where no work is performed.  The Court should "resist attributing to Congress an intention to render a statute so internally inconsistent." *Greenlaw v. United States*, 554 U.S. 237, 251 (2008).

In the context of this expansive definition of "rights and benefits" and 19 illustrations, Congress *originally* placed a single exclusion in § 4303(2): "(other than wages or salary *for work performed*)."  38 U.S.C. § 4303(2) (1994) (emphasis added).  Thus, originally, the only exclusion was "wages or salary *for work performed*."  Under the *expressio unius est exclusio alterius* canon, if a legislature expressly includes an exception in a law, it "indicates its intention to exclude other exceptions."  *Keeley v. Loomis Fargo & Co.*, 183 F.3d 257, 266 (3d Cir. 1999); *accord Martin v. Hamil*, 608 F.2d 725, 728 (7th Cir. 1979); *Custer v. Lincoln Nat'l Life Ins. Co. of Ft. Wayne, Ind.*, 141 F.2d 144, 147 (7th Cir. 1944).  If Congress wanted *no types* of wages or salary to fall within § 4303(2), it simply could have excluded "any wages or salary."  This exclusion of *only* "wages or salary *for work performed*" comports with Congress' intent to "affirm the decision in *Waltermyer*" that military leave receive "the most favorable treatment accorded any particular leave."  House Rpt. at 33-34; *see* S. Rep. No. 103-158, at 58 (1993) ("Senate Rpt.").  The proper way to interpret this express exclusion of "wages or salary *for work*

---

[2]  By definition, "severance pay" and "supplemental unemployment benefits" are paid to former employees no longer performing work.  And the benefit of paid "vacations" is pay for not performing work. Under the federal tax code, payments from "severance pay, supplemental unemployment benefits, vacations" are all treated as taxable wages and must be reported on a W-2 Form. *See* IRS Publication 15, (Circular E) Employer's Tax Guide at 15 (Dec. 17, 2018), https://www.irs.gov/pub/irs-pdf/p15.pdf; IRS Publication 4128, Tax Impact of Job Loss at 1-2 (2015), https://www.irs.gov/pub/irs-pdf/p4128.pdf.

*performed*" is Congress intended *not to exclude* "wages for *work not performed*" from § 4303(2).

The *current version* of § 4303(2)'s parenthetical – "(including wages or salary for work performed)" – is even more clear, in light of *why* it was enacted. United argues that by expressly including "wages or salary for work performed" in § 4303(2) in 2010, the *expressio unius* canon mandates the view that Congress implicitly intended to exclude "wages or salary for work not performed." Def.'s Mem. 8-9. But that canon does not apply here. *Expressio unius* does not apply where a statute uses the term "including" to introduce a list of one or more items, since "the term 'including' is typically 'illustrative and not limitative.'" *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 943 (7th Cir. 2015) (quoting *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 577 (1994)); *id.* ("The word 'including does not lend itself to such destructive significance." (quoting *Phelps Dodge Corp. v. N.L.R.B.*, 313 U.S. 177, 189 (1941))). Here, § 4303(2) uses *including* or *includes* three times in the list of "rights and benefits" that it identified as "illustrative and not intended to be all inclusive." House Rpt. at 21.

The history of the 2010 amendment illustrates that it was intended only to expand, not limit § 4303(2). In *Gagnon v. Sprint Corp.*, 284 F.3d 839 (8th Cir. 2002), a veteran claimed he was paid $1,000 less per year due to his military service. *Id.* at 853. The Court rejected his discrimination claim under § 4311(a), as § 4311(a) required him to show that his employer "denied him a benefit of employment," and *at that time* "[t]he term 'benefit,' as defined by the USERRA, specifically exclude[d] wages or salary for work performed." *Id.* In 2010, Congress overruled *Gagnon* by changing the phrase "(*other than* wages or salary for work performed)" to "(*including* wages or salary for work performed)." *See* Pub. L. No. 111-275, § 701(a) (2010).

As United concedes, Congress's sole explanation of the amendment summarized *Gagnon* and explained the amendment "would amend section 4303(2) . . . to make it clear that wage

discrimination is not permitted under USERRA." 156 Cong. Rec. S7656-02. This amendment's

narrow focus is reflected in its heading: "Clarification That USERRA Prohibits Wage

Discrimination Against Members of the Armed Forces." Pub. L. No. 111-275, § 701(a). And

the Seventh Circuit held that *this narrow focus* was the purpose of the amendment, *Gross v. PPG

Indus.*, 636 F.3d 884, 889 n.3 (7th Cir. 2011), not repealing preexisting rights.

Thus, the proper reading of the amendment is that Congress solely wanted to clarify or

expand § 4303(2)'s scope by "*including* wages or salary for work performed" in "rights and

benefits" to bar wage bias under § 4311(a), not abandon § 4316(b) and § 4303(2)'s equality rule

that protects wages for work not performed as "rights and benefits." Nothing in its text or

history suggests otherwise. In fact, eliminating the sole exemption that existed in § 4303(2)

reaffirmed Congress's original intention that § 4303(2) covers "all attributes of the employment

relationship." House Rpt. at 21, as described in greater detail below. *See infra* at 9-10.

### B. USERRA's Legislative History and the Case Law Preceding USERRA § 4316(b)'s Equality Rule Require the Same Conclusion

USERRA's predecessor law's history and its own legislative history confirm that the

equality principle applies to wages for work not performed. As United concedes, Def.'s Mem.

10, "the extensive body of case law" under USERRA's predecessor laws "remains in full force

and effect in interpreting" USERRA if it "is consistent with the provisions of the Act." House

Rpt. at 19; Senate Rpt. at 40. USERRA "needs to be read, not in isolation, but in the context of

the history and evolution of the entire statute[.]" *Lapine v. Wellesley*, 304 F.3d 90, 97-98 (1st

Cir. 2002). Also, as United concedes, Def.'s Mem. 12, in enacting § 4316(b) Congress intended

to codify *Waltermyer*, which recognized that employees who take military leave must be treated

as equal to employees who take other comparable leaves and held that an employee who took

short-term military leave on a holiday must receive holiday pay on the same terms as employees

who took jury duty that day and performed no work. *Waltermyer*, 804 F.2d at 824-26. This equality rule "establishes equality for . . . reservists, not preferential treatment." *Id.* at 825.

As Congress explained, § 4316(b) "would codify court decisions that have interpreted current law [VRRA] as providing a statutorily-mandated leave of absence for military service that entitles servicemembers to participate in benefits that are accorded other employees." Senate Rpt. at 58 (citing *Waltermyer*, 804 F.2d 821). It would "affirm the decision in *Waltermyer* . . . that, to the extent the employer policy or practice varies among various types of non-military leaves of absence, the most favorable treatment accorded any particular leave would also be accorded the military leave, regardless of whether the non-military leave is paid or unpaid." House Rpt. at 33-34. Thus, Congress plainly intended to affirm *Waltermyer*'s holding that employees on military leave must receive the same right to pay as employees who take other types of leave and perform no work. Consistent with its codification of *Waltermyer*, Congress declared that the "rights and benefits" protected by § 4316(b) "are broadly defined to include *all attributes of the employment relationship*." House Rpt. at 21 (emphasis added). It explained:

> Section 4303(2) would define "benefit," "benefit of employment," and employment related "rights and benefits." These are the rights, incident to employment, which are protected under chapter 43. These rights are broadly defined to include all attributes of the employment relationship which are affected by the absence of a member of the uniformed services because of military service. The list of benefits is illustrative and not intended to be all inclusive.

*Id.* And in the statute that Congress enacted, § 4303(2) contains numerous forms of wages or compensation where no work is performed, like "severance pay, supplemental unemployment benefits, [and] vacations." 38 U.S.C. § 4303(2); *see supra* at 5-6.

United argues that *Waltermyer* did not resolve whether employees on military leave must receive wages when those who take comparable leaves get wages. Def.'s Mem. 11-12. While *Waltermyer*'s holding was limited to holiday pay, as the plaintiff did not claim he was entitled to

pay for all days of military leave, the dissent noted that the majority's reasoning necessarily mandated that he receive pay for all days of military leave: "If a reservist and juror are equal, then the reservist is not entitled to just holiday pay but to full pay for all days not worked, since employees absent for jury duty receive full pay." 804 F.2d at 827 (Hunter III, J., dissenting).

United's analysis of *Monroe v. Standard Oil Co.*, 452 U.S. 549, 563 n.14 (1981), is misplaced. Def.'s Mem. 11-12. As the Seventh Circuit observed, *Monroe* did not involve a reservist seeking to be paid when he took military leave; it held that the VRRA did not require *preferential* scheduling rights not given to non-military employees. *Crews*, 567 F.3d at 865. And *Monroe's* comment that the VRRA's history did not indicate reservists were "entitled to all 'incidents and advantages of employment' accorded during their absence to *working employees*, including regular time and overtime pay," *Monroe*, 452 U.S. at 563, is dicta. The key phrase is "*working employees*," because employees on military leave are *not entitled to the same rights* as non-military employees *who are working*. *Id.* (emphasis added). VRRA did not mandate pay for employees on military leave simply because other employees *who continue working are paid*.

In an opinion endorsed by the Seventh Circuit, the Fifth Circuit closely analyzed § 4316's history and explained that § 4316 codified a general VRRA section at issue in *Monroe* and *Waltermyer* into more specific provisions of USERRA, and in doing so it enshrined the equality rule in § 4316(b). *Rogers v. City of San Antonio*, 392 F.3d 758, 768-71 (5th Cir. 2004); *see also Crews*, 567 F.3d at 865. But nowhere did *Rogers* suggest that Congress excluded any form of compensation or wages from § 4316(b)'s "rights and benefits." Instead, for each right the reservist claimed he was owed during military leave, it examined whether employees on non-military leave got the same rights to decide if the equality principle mandates equality for reservists on leave. *Rogers*, 392 F.3d at 771-72.

### C. Courts Interpreting § 4316(b) and § 4303(2) Have Held Employees Must Be Paid for Military Leave When the Employer Pays for Comparable Leave

United does not identify a single case rejecting the view that § 4316(b) and § 4303(2) mandate equality in wages for those on military leave and comparable leaves. But federal courts have held that § 4316(b)'s equality rule requires military leave to be paid if employees who take comparable leave are paid. *Brill*, 2012 WL 893902, at *6 (holding military duty comparable to jury duty and reservists on military duty entitled to same pay as those on jury duty); *Duffer*, 173 F. Supp. 3d at 704 (holding military leave comparable to jury duty and sick leave and employer paying retroactive wages to employees on jury duty or sick leave must pay same wages to those on military leave). The *Brill* court held that § 4316(b) mandates equal wages for employees who take military leave and jury duty, as it "was intended to codify" *Waltermyer*'s equality rule:

> Defendant would not be providing anything it does not already provide to employees on jury duty/witness leave by paying Plaintiff his full salary for time spent on military leave. Actually, by paying an employee in this manner, Defendant would be complying with the statutory mandate to give the employee the most favorable treatment accorded any comparable form of leave.

*Brill*, 2012 WL 893902, at *5-6 (citing House Rpt. at 33-34). *Brill* comports with the Seventh Circuit's holding that § 4316(b) does not require preferential treatment, but "requires [] equal benefits for Guard and non-Guard employees" when they take leave. *Crews*, 567 F.3d at 865.

### D. Any Ambiguity Must Be Construed in Favor of the Servicemember

As United agrees, Def.'s Mem. 13, the Court must "construe USERRA liberally in favor of veterans seeking its protection." *Davis v. Advocate Health Ctr. Patient Care Exp.*, 523 F.3d 681, 683-84 (7th Cir. 2008) (citation omitted). Under this canon, courts must "construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946). When construing

11

§ 4316(b) and § 4303(2), the Court must interpret them *together* as broadly as a fair reading permits. *See id.* This canon is not a tiebreaker between two equally persuasive positions. Any "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). Thus, United cannot merely show that its position is more persuasive, but must show that Plaintiff's position cannot possibly be right. United has not carried that burden.

### E. A Proper Interpretation of USERRA § 4316(b) Will Not Impose a General or Absolute Mandate on Employers to Provide Paid Military Leave

Most of United's brief focuses on an uncontroversial point: that USERRA does not impose a general mandate to pay employees whenever they take military leave. Def.'s Mem. 3-6, 8-9. But the Complaint does not claim that United must pay *whenever* employees take military leave. It merely alleges that § 4316(b) requires paid leave for short-term military leave when employees who take comparable leaves get paid. Compl. ¶¶ 69-72. From the undisputed premise that USERRA does not *always* require paid military leave, United reaches the unsupported conclusion that USERRA *never* requires paid military leave. Def.'s Mem. 4-7. Not only is this illogical, but it ignores case law, text and history of USERRA.

United cites a case that rejected the claim that the failure to properly calculate a *voluntary paid military leave policy* violates USERRA § 4311(a)'s ban on discrimination, *Miller v. City of Indianapolis*, 281 F.3d 648 (7th Cir. 2002), and a case that has nothing to do with the facts or law in this case, *Buckley v. Peak6 Invs., LP*, 827 F. Supp. 2d 846 (N.D. Ill. 2011). Def.'s Mem. 4-5. But these cases did not involve § 4316(b) or the claim that § 4316(b) applies to wages for work not performed. In *Buckley*, the plaintiff claimed his employer required him to use paid vacation during military leave in violation of § 4316(d) – not § 4316(b) – but he showed no evidence this occurred. 827 F. Supp. 2d at 856. The *Miller* court rejected the argument that USERRA § 4311(a) can be used to challenge how a city calculated the paid military leave

required by state law, as it cannot constitute discrimination under § 4311(a) to deny a benefit to reservists (*i.e.*, paid military leave) that "other employees do not receive." 281 F.3d at 651.

United also cites *Gross v. PPG Industries*, which merely reaffirmed that § 4316(b) does not mandate preferential treatment for reservists vis-à-vis other employees who take leave. 636 F.3d at 889-90. Like *Miller*, *Gross* held § 4316(b) is not a vehicle to enforce a voluntary paid military leave policy because that benefit is not "equally available to military and non-military employees." *Id.* And in *Duncan v. Tyco Fire Prods., LP*, No. 16 Civ. 916, 2018 WL 3303305 (N.D. Ala. July 5, 2018), the court merely held that USERRA does not bar employers from limiting voluntary paid military leave, which is not given equally to non-reservists. *Id.* at *4.

United cites *Duffer*, Def.'s Mem. 5, but *Duffer* followed *Waltermyer* and *Brill* in holding that under § 4316(b), retroactive payments of $400 million in wages and other benefits had to include pay for reservists who took leave, since employees who took comparable leaves (jury duty and sick leave) were credited for not performing work. *Duffer*, 173 F. Supp. 3d at 703-05.

United identifies Department of Labor ("DOL") and Department of Justice regulations and handbooks that recite the proposition that USERRA does not generally require paid military leave. Def.'s Mem. 5. Yet none addresses § 4316(b)'s equality rule. By contrast, the DOL's final rule described how § 4316(b) codified *Waltermyer*'s equality rule, that the same types of "rights and benefits" must be afforded to employees on military leaves and comparable leaves, and must be applied to various types of pay for work not performed *without any indication that wages for work not performed are excluded*. 70 Fed. Reg. 75,246, 75262-64 (Dec. 19, 2005).

As a leading USERRA treatise explains: "[g]enerally, USERRA does not require employers to pay employees wages for time spent performing military service. Nonetheless there are circumstances under which an employee on military leave would be entitled to pay,"

13

such as when employees who take non-military leave receive pay for not working. Kathryn Piscitelli & Edward Still, The USERRA Manual § 3:5 Pay (2018) (pointing to § 3.3 that describes cases like *Brill* and *Waltermyer* applying § 4316(b) to pay for military leave).

Finally, United claims that Congress did not intend § 4316(b) to require paid military leave due to a law it enacted *before* USERRA to give federal employees 15 days of paid military leave, 5 U.S.C. § 6323. Def.'s Mem. 9, 14. But United's attempt to manufacture a conflict contradicts the principle that "[w]here 'two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *Levin v. Madigan*, 697 F. Supp. 2d 958, 968 (N.D. Ill. 2010) (quoting *J.E.M. Ag Supply, Inc. v. Pioneer Hi–Bred Int'l*, 534 U.S. 124, 143-44 (2001)). These two federal laws can easily be read consistently. USERRA § 4302(a) acknowledges that other federal laws can grant additional rights beyond USERRA, as 5 U.S.C. § 6323(a)(1) does. The limited paid leave § 4316(b) requires does not bar paid leave under § 6323. In the vast majority of cases, 15 days of paid leave under § 6323 would cover all of the paid short-term military leave that § 4316(b) requires. Reservists often perform military duty that "consists generally of one 2-week period during the year and one weekend day per month," *Miller*, 281 F.3d at 649, but reservists often do not take leave to perform their weekend drills. Thus, 15 days of paid leave will often suffice.

### F. The Consequences of Applying § 4316(b) As Written Will Be Minimal, But Cannot Override the Statute That Congress Enacted to Protect Reservists

United claims that applying § 4316(b)'s equality rule will impose an economic hardship, and the Court should invent an exemption in § 4316(b) and § 4303(2) for wages for work not performed. Def.'s Mem. 13-14. But the likely impact is quite small. Less than 1% of employees in the labor force are reservists, about 1.1 million reservists out of 162 million

14

workers.[3]  Such a limited duty to pay for a modest amount of short-term military leave – usually two weeks a year – to a tiny part of the labor force cannot have a major impact.  A court cannot disregard a law's text and legislative history (or USERRA's liberal canon) because applying the law as written may have negative consequences.  *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013).  Congress struck an appropriate balance by enacting § 4316(b) and codifying *Waltermyer*'s equality rule.  Applying this rule to wages *for work not performed* is consistent not only with *Monroe*'s dicta about *working employees*, but also with USERRA's purpose to "minimize[e] the disadvantages to civilian careers" from military service.  38 U.S.C. § 4301(a)(1).  Congress was presumably aware of laws requiring leaves comparable to military leave.  Def.'s Mem. 14.

## II.    UCH is an Employer Under USERRA § 4303(4) with Respect to Count I.

UCH claims that it is not an "employer" under USERRA § 4303(4) as to Count I (though it does not dispute it is an employer for Counts II and III).  *Id.* at 4-5.  But UCH ignores that USERRA defines an "employer" as "any person, institution, organization, or other entity that pays salary or wages for work performed *or that has control over employment opportunities*."  38 U.S.C. § 4303(4)(A) (emphasis added).  Congress intended this definition to "be broadly construed" to "include[] not only what may be considered a 'traditional' single employer relationship, but also . . . those where more than one entity may exercise control over different aspects of the employment relationship."  House Rpt. at 21.  Thus, UCH *and* UAL may both be "employers" if each has some control over the employment opportunities at issue.[4]

---

[3]     *See* Dep't of Defense, 2016 Demographics: Profile of the Military Community 59 (2016), https://download.militaryonesource.mil/12038/MOS/Reports/2016-Demographics-Report.pdf; Bureau of Labor Statistics, Employment Situation Summary Table A. Household data, seasonally adjusted (May 3, 2019), https://www.bls.gov/news.release/empsit.a.htm.

[4]     Contrary to UCH's claim, Def.'s Mem. 17, whether UCH is a "carrier" under the Railway Labor Act, 45 U.S.C. § 184, has no bearing on whether UCH is an employer *under USERRA*.  None of UCH's cases suggests otherwise.  RLA § 181's definition of "carrier" has none of the concepts or text in USERRA's definition of "employer," like the rule that an entity is an employer if it "*has control over*

The Complaint alleges UCH controls employment opportunities by signing the collective bargaining agreement ("CBA") that governs the relevant benefits, by negotiating the CBA's leave provisions, and "mak[ing] the decision not to pay . . . for short-term military leave while" paying for "jury duty leave or sick leave." Compl. ¶¶ 36-39. These allegations, which must be taken as true, suffice to allege that UCH made (at least in part) the challenged employment decisions and controlled the relevant opportunity. Contrary to UCH's claim, the Complaint does not merely allege that UCH executives wore *both* UCH and UAL hats at various times, but that those executives *wore their UCH hats* when they did the acts that make UCH an employer.

None of UCH's cases holds that a parent company that negotiates and signs a CBA with a subsidiary cannot be an employer under § 4303(4) for the opportunities governed by the CBA. Under USERRA, like Title VII, "a parent company and its subsidiary can be considered a single employer." *McDaniel v. Loyola Univ. Med. Ctr.*, No. 13 Civ. 06500, 2014 WL 4269126, at *6 (N.D. Ill. Aug. 28, 2014) (denying motion to dismiss on employer status where one entity owned another and established guidelines for the other). As in *McDaniel*, "[d]iscovery will shed light on the corporate interconnectivity" and the "degree" of control by UCH. *Id.* And here, UCH exercised far more control as it negotiated and is party to the contract establishing the challenged policies. Compl. ¶¶ 36-38. Tellingly, all of UCH's adverse § 4303(4) cases were decided at summary judgment or later. *See* Def.'s Mem. 15-16.

Whether UCH has authority to hire, fire, or promote are irrelevant, as the Complaint challenges an employee benefits decision established by a CBA. *See* Def.'s Mem. 15. Even UCH's own authority explains that such authority is not necessary (though it is sufficient) to be an employer. *See Carter v. Siemens Bus. Servs., LLC*, No. 10 Civ. 1000, 2010 WL 3522949, at

---

*employment opportunities*." 38 U.S.C. § 4303(4)(A) (emphasis added). If Congress wanted to treat entities subject to the RLA differently than other entities under USERRA, it would have said so.

*8 (N.D. Ill. Sept. 2, 2010) (explaining USERRA "support[s] a broader interpretation of the term 'employer," than only entities that "hire and fire," including since USERRA bars the denial of benefits, which does not involve hiring or firing (citing *Baldwin v. City of Greensboro*, No. 09 Civ. 742, 2010 WL 3211055, at *3-4 (M.D.N.C. Aug. 12, 2010) (same))). An entity that merely "influence[s] the company's decision" or "recommend[s]" it may be an employer, as these steps show "control over employment opportunities." *Id.* at *9 (quoting 20 C.F.R. § 1002.5(d)(1)).

Finally, UCH cites cases where entities were "not involved in any decisions" over employment opportunities, as they did not help establish policies or even make recommendations on decisions. Def.'s Mem. 15-16. For example, in *Pate v. MetoKote Corp.*, No. 11 Civ. 209, 2012 WL 5493865, at *9-10 (S.D. Ohio Nov. 13, 2012), without considering § 4303(4)'s definition, the court held that a staffing agency that assigned a temporary worker to an employer could not be liable for the employer's own decisions not to directly hire the employee and to block the worker from its property – since the staffing agency had no role whatsoever in those decisions. *Id.* In contrast, here the Complaint alleges that UCH directly made the decisions and entered the contract that determined the *specific* opportunities at issue. Compl. ¶¶ 36-39. That sufficiently alleges UCH is an "employer" under USERRA § 4303(4).

## III. Count II Properly Alleges a USERRA§ 4316(b) for Denial of Profit-Sharing Credit

Count II alleges that United violated USERRA § 4316(b)(1) by crediting participants who take jury duty leave or sick leave for the purpose of calculating profit-sharing benefits, but failing to credit short-term military leave. Compl. ¶¶ 65, 67, 89-90. UCH argues that employees who took leave for jury duty or sick leave were paid, and their credits under the Plan just reflect these wages. Def.'s Mem. 19-20. By making this argument, it attempts to recharacterize Count II as seeking a benefit that employees on jury duty and union duty did not receive (*i.e.*, credit for *unpaid leave*), and from that premise it argues that the Complaint fails to identify a comparable

benefit other employees received that was not given to employees on military leave.  *Id.* at 20.

UCH assumes wrongly that Count II rests entirely on the claim of Count I.  Def.'s Mem. 20.  While it is true that if Count I states a claim, Count II does as well – because if White should have been paid, he would have received profit sharing credit based on those payments – the reverse is not true.  Count II alleges that Plaintiff is entitled to credit to profit sharing credit *even if* he was properly not paid for his short-term military service.  The Complaint specifically alleges that the denied benefit was the accrual of profit sharing credits.  Compl. ¶ 87.  Whether the credits are viewed as benefits that accrue under a pension plan or paid as a bonus (as United claims), such credits are plainly among the "rights and benefits" protected by § 4316(b)(1), as defined in § 4303(2).  *See* 38 U.S.C. § 4303(2) (defining "rights and benefits" as "including" "advantages" that "accrue[] . . . under a pension plan" or "bonuses").

That such profit sharing credits were awarded to employees on *paid* leave makes no difference to whether reservists on unpaid military leave must get the same rights.  In enacting § 4316(b) and codifying *Waltermyer*, Congress emphasized that "the most favorable treatment accorded any particular leave [must] also be accorded the military leave, *regardless of whether the non-military leave is paid or unpaid*."  House Rpt. at 33-34.  In *Waltermyer*, the Third Circuit held that unpaid military leave was *comparable to* paid jury duty leave, and therefore awarded a benefit (holiday pay) to the reservists even though jury duty leave was paid and military leave was unpaid.  *Waltermyer*, 804 F.2d at 822, 825.  For example, in *Benetiz v. Montebello*, No. 09 Civ. 0303, 2010 WL 3814374 (C.D. Cal. Sept. 27, 2010), the city had two categories of leave for employers: paid and unpaid.  *Id*. at *1-2.  Employees on paid leave accrued time off under the city's policies, but employees on unpaid leave did not.  *Id*. at *1.  Military leave was unpaid leave.  *Id.*  The Court held the city violated USERRA "when [it] denied Plaintiff annual leave

18

accrual while he was on military leave." *Id*. at *2. The relevant benefit was the "annual leave accrual" and not the right to be credited leave accrual while on unpaid leave. *See id.*

Here, Count II alleges that Plaintiff is entitled to credit under the Plan equivalent to that accrued by employees who took comparable forms of non-military leave like jury duty, regardless of whether his military leave is unpaid and the comparable leave is paid.

**IV.    Count III Properly Alleges a Claim Under USERRA § 4318.**

Count III alleges that United violated USERRA § 4318 by failing to treat military leave as service with the employer for purposes of calculating benefits under the Profit Sharing Plan, as required by USERRA § 4318(a)(2)(B). Compl. ¶¶ 92-104. The Complaint alleges that the Profit Sharing Plan is a pension plan under USERRA. *Id.* ¶ 96. United assumes that only ERISA-covered plans are pension plans under USERRA and then argues only that the Plan is not an ERISA plan. But United ignores that a pension plan under USERRA is defined to include *not only* a pension plan under ERISA, *but also* plans excluded from ERISA coverage. And the Complaint alleges sufficient facts that this Plan is a pension plan.

**A.    Count II Sufficiently Alleges That the Profit-Sharing Plan is a Pension Plan Under USERRA § 4318 Regardless of Whether It is An ERISA Pension Plan.**

United contends that a pension plan under USERRA is limited to (1) plans that meet the definition of a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2), or (2) plans specifically mentioned in a DOL regulation as *examples* of ERISA-exempt pension plans that are covered by USERRA. Def.'s Mem. 20 n.5. But United's argument contradicts proper statutory interpretation and USERRA's legislative history.

USERRA does not define a pension plan. The DOL's regulation explains that "Any such [ERISA-covered] plan maintained by the employer or employers is covered under USERRA," but adds that "**USERRA also covers certain pension plans not covered by ERISA, such as**

19

**those** sponsored by a State, government entity, or church for its employees." 20 C.F.R. § 1002.260 (emphasis added). Based on this regulation, United asserts, without any authority, that USERRA's definition of pension plan is limited only to those three examples in the regulation. Def. Mem. 20 & n. 5. That logic is simply wrong.

Contrary to UCH's interpretation, "[t]he phrase 'such as' typically indicates that enumerated examples are not comprehensive." *United States v. Godoy*, 706 F.3d 493, 495 (D.C. Cir. 2013) (refusing to interpret "'such as' to mean 'limited to'"); *Donovan v. Anheuser-Busch, Inc.*, 666 F.2d 315, 326-27 (8th Cir. 1981) ("such as" does not "constitute words of limitation" but rather "is an example or illustration"); *Temores v. Cowen*, 289 F. Supp. 2d 996, 1000 (N.D. Ill. 2003) ( "the phrase 'such as' before listing examples" foreclosed an interpretation that the list of examples was exhaustive). If DOL (or Congress) wanted to limit USERRA coverage to certain specified plans, it would have done so. Thus, the argument that USERRA is limited to ERISA-covered plans and certain specified non-ERISA covered plans is contrary to proper statutory interpretation. And any question here about the scope of pension plans under USERRA should be construed liberally in favor of greater protection for servicemembers. *See supra* at 11.

The DOL and IRS describe USERRA as requiring restoration of "pension, profit sharing and similar benefits that would have accrued but for the employee's absence due to military service." Dep't of Labor, *News Release* USDL 96-394, 1996 WL 538255 (Sept. 18, 1996); *see* IRS Notice 2010-15, 2010-6 I.R.B. 390, 2010 WL 177753, *1 (Feb. 8, 2010); Dep't of Labor, 70 Fed. Reg. at 75276-01, 75279-80, 2005 WL 3451172 (explaining "[t]he term 'employee pension benefit plan'" under USERRA includes any plan "that provides retirement income or results in the deferral of income" until after termination and "[p]rofit sharing . . . plans that meet this test are included."). Count III alleges the Plan allows participants to direct that their awards be paid

into a retirement plan and defer the income until after termination of employment or retirement. Compl. ¶ 96; *see* ECF No. 32-1 (Lounsbury Decl.) Ex. A at 7. USERRA § 4318 expressly provides that it applies to "elective deferrals" by an employee. *See* 38 U.S.C. § 4318(b)(2).

This is consistent with Congress's rejection of the decision in *Raypole v. Chemi-Trol Chem. Co., Inc.*, 754 F.2d 169 (6th Cir. 1985),[5] to protect servicemembers' participation in "profit sharing plans." *Id.* at 172. House Rpt. at 35-36 ("The protections of these sections apply equally to defined benefit . . . and defined contribution plans" and "[t]he same would be true of those profit sharing plans which are in reality rewards for length of service"); Senate Rpt. at 64-65 (stating bill would apply to profit sharing plans). Indeed, United's argument that the Plan merely provides bonuses or wages is similar to *Raypole's* now rejected rationale. *Compare* Def.'s Mem. 21-23 *with Raypole*, 754 F.2d at 175 (finding the "'real nature' of [profit-sharing] Plan is short-term compensation for work performed by employees").

Nor is there anything unusual about a statute applying a definition that includes, but is broader than, ERISA-covered plans. For example, the Illinois Code defines "Retirement Plan" to include both plans covered by ERISA and those exempted from ERISA coverage. 735 Ill. Comp. Stat. Ann. 5/12-1006(b) (defining retirement plan to *include* profit sharing plans regardless of whether they meet ERISA's definition). Thus, United's assertion that USERRA must be limited to ERISA-covered plans is wrong and contrary to USERRA's text and history.

### B. The Complaint Sufficiently Alleges That the Profit-Sharing Plan Meets the Definition of a Pension Plan Under ERISA § 3(2).

Even if the definition of a pension plan under USERRA and ERISA were coextensive, Count III sufficiently alleges that the Profit Sharing Plan is a pension plan as defined under

---

[5]     While *Raypole* held profit-sharing plans are not covered, not all courts adopted this view under the VRRA. *See U.S. ex rel. Reilly v. New Eng. Teamsters & Trucking Indus. Pension Fund*, 737 F.2d 1274, 1282-83 (2d Cir. 1984) (finding defined contribution plan to be covered).

ERISA § 3(2). The plan's designation as a profit-sharing plan itself suggests that it is a pension plan. *See In re Baker*, 114 F.3d 636, 639 (7th Cir. 1997) (finding profit-sharing plan was an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A)); *Darby v. C. I. Comm'r*, 97 T.C. 51, 59 (Tax Ct. 1991) ("Under section 3(2) of ERISA, 'pension plan' is defined to include, for purposes of title I (the labor title) of ERISA, what the Internal Revenue Code refers to as 'profit-sharing' plans."). This accords with the principle that a plan need not systematically defer income to be a pension plan under ERISA, but rather merely "result in a 'deferral of income.'" *Tolbert v. RBC Capital Mkts. Corp.*, 758 F.3d 619, 627 (5th Cir. 2014) (finding plan that allowed employees the "option to defer income" was an ERISA pension plan); *see Holansky v. Prudential Fin.*, No. 02 Civ. 4820, 2004 WL 1404016, at *2 (N.D. Ill. June 21, 2004) (denying motion to dismiss as plan could be a pension plan if employees regularly utilized it as a retirement plan); *see also In re Baker*, 114 F.3d at 638-39 (finding a profit sharing plan that "provides for deferred and retirement income" was an ERISA pension plan). Here, the Plan allowed employees to defer their payments until termination of employment or retirement by deferring receipt of a benefit payment into a 401(k) Plan. Compl. ¶¶ 70, 96; Lounsbury Decl. Ex. A at III.E. That is a sufficient allegation that this Plan is a pension plan under USERRA.

United asserts that to be an ERISA plan the *main purpose* of the Plan must be to provide retirement income or defer income beyond termination of employment. Def.'s Mem. 24. But its cases primarily involve circumstances where the retirement income or income deferral purposes were incidental: they involved awards of stock, and none involved a plan that included elective deferral of income until termination of employment or retirement. *See, e.g.*, *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 933 (8th Cir. 1999) ("There is no indication in the record that PSP redemptions were regularly deferred."); *Rich v. Shrader*, No. 09 Civ. 0652, 2011 WL

4434852, at *8 (S.D. Cal. Sept. 22, 2011) ("There is no systematic deferral of income into the retirement years."); *Goodrich v. CML Fiberoptics*, Inc., 990 F. Supp. 48, 49–50 (D. Mass. 1998) ("the[] Plan . . . provides for the exercise of stock options on specific dates over a three-year period"); *Kaelin v. Tenneco, Inc.*, 28 F. Supp. 2d 478, 487 (N.D. Ill. 1998) (plan "provided benefits to employees who remained employees for four years after Packaging granted them blocks of stock"); *Int'l Paper Co. v. Suwyn*, 978 F. Supp. 506, 512 (S.D.N.Y. 1997) ("the terms . . . provide for forfeiture of the restricted shares awarded under the program upon termination of employment"). Most of these cases involve stock award or stock options and "courts have uniformly held that an incentive stock option plan is not an ERISA plan." *Oatway v. Am. Int'l Grp. Inc.*, 325 F.3d 184, 187 (3d Cir. 2003); *Strzelecki v. Schwarz Paper Co*., 824 F. Supp. 821, 827 (N.D. Ill. 1993) (recognizing some courts have found "a fundamental difference … between payment for stock and establishment of an ERISA plan").

UCH ignores that invoking the "bonus" exemption of 29 C.F.R. § 2510.3-2(c) implicitly acknowledges that this Plan meets the definition of a pension plan under ERISA § 3(2). Def.'s Mem. 21-23. The DOL exemption excludes from ERISA coverage plans that "would otherwise be subject to the requirements of [ERISA]." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 1004 (9th Cir. 2010); *Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629, 633 (W.D. Wis. 1979). As this exemption excludes plans from ERISA *coverage* that otherwise meet the definition of an ERISA pension plan, Defendants' argument that the exemption applies suggests that plan meets the definition under ERISA § 3(2). That is all USERRA requires. *See* 38 U.S.C. § 4318(a)(1)(A) ("pension plan" "include[es] those described in sections 3(2)" of ERISA).

### C. The DOL Regulatory Bonus Plan Exemption Does Not Apply to USERRA, But Even if It Did, the Plan is Not a Bonus Plan Exempt from ERISA.

United argues that, despite being entitled a Profit Sharing Plan, the Plan is, in fact, a

bonus plan and is subject to an exemption under the DOL ERISA Regulations that applies to "bonus plans." Def.'s Mem. 21-23. But the bonus plan exemption under the ERISA regulations does not apply to USERRA and UCH has not carried its burden to show the Plan is a bonus plan.

United assumes, without authority, that 29 C.F.R. § 2510.3-2(c) applies to USERRA's definition of "employee benefit pension plan." Def.'s Mem. 21-23. But DOL's safe harbor exemption is expressly limited to clarifying the "defined terms 'employee pension benefit plan' and 'pension plan' for purposes of Title I of [ERISA]," and only "for those purposes." 29 C.F.R. § 2510.3-2. Had DOL intended its USERRA regulation defining a pension plan under USERRA to exclude plans exempted from ERISA coverage, its USERRA regulation would have stated so.[6]

Even if the bonus plan exemption applied to USERRA, the burden to establish that exemption rests with the party asserting it. *McCann v. Unum Provident*, 907 F.3d 130, 147 (3d Cir. 2018) (finding exemption from ERISA not established); *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 636 (7th Cir. 2005) (burden to establish exemption rests on the party asserting it). And "[t]he Seventh Circuit has held that coverage under ERISA should be liberally construed, while exemptions from ERISA should be applied narrowly." *Bass v. Mid–America Co., Inc.*, No. 95 Civ. 1167, 1995 WL 622397 (N.D. Ill. Oct. 20, 1995) (citing *Brundage-Peterson v. Compcare Health Servs. Corp.*, 877 F.2d 509, 511 (7th Cir. 1989)).[7] United has not met this burden.

United argues that the Plan states it is a "cash bonus plan." Def.'s Mem. 21. But whether the employer intended the Plan to be governed by ERISA does not determine whether ERISA, in

---

[6]     USERRA § 4318 applies "to an employee pension benefit plan (including those described in sections 3(2) and 3(33) of [ERISA])," without mentioning any safe harbor exemptions.

[7]     "ERISA's definition of a pension plan is so broad, virtually any contract that provides for some type of deferred compensation will also establish a de facto pension plan, whether or not the parties intended to do so." *Modzelewski v. Resolution Tr. Corp.*, 14 F.3d 1374, 1377 (9th Cir. 1994). By utilizing this broad definition for USERRA without reference to any exemptions, the drafters of USERRA manifested an intention to cover plans that are subject to ERISA exemptions.

fact, governs the Plan. *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263-64 (11th Cir. 2004); *Meredith v. Time Ins. Co.,* 980 F.2d 352, 354 & n.7 (5th Cir. 1993). "Defendants' argument that [a program] is not an ERISA-covered pension plan solely by virtue of the fact that it provides a bonus to employees by itself does not carry the day." *Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 412, 414 (S.D.N.Y. 2015) (denying motion to dismiss based on bonus plan exemption to ERISA). Another court in this District held that a plan is "not a bonus plan" where, as here, awards "are not granted to certain employees as performance rewards, but rather everyone within certain classes of employees is allowed . . . to participate." *Holzer v. Prudential Eq. Grp. LLC*, 458 F. Supp. 2d 587, 591 (N.D. Ill. 2006) (denying motion to dismiss). This Plan applies to a broad spectrum of employees and the condition of and amount of payment is set by formula; it is not discretionary or based on special service. Lounsbury Decl. Ex. A at II.A, III.B.3. Thus, the character of the payments made under this Plan indicate that the Plan is *not* a bonus plan.

United predominately relies on *Emmenegger*, 197 F.3d 929, and other cases that *involve bonus programs*. Def.'s Mem. 22-23. *Emmenegger*'s conclusion that the option to defer receipt of benefits until retirement or termination does not trigger ERISA coverage, however, was "*premised* on the conclusion that the plan at issue was a bonus program under 29 C.F.R. § 2510.3–2(c). . . . Here, because the regulation does not apply, the cases applying that regulation are not persuasive." *Tolbert*, 758 F.3d at 626-28 (distinguishing *Emmenegger*, 197 F.3d at 932).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Dated: May 17, 2019

Respectfully submitted,

*/ s / Peter Romer-Friedman*
Peter Romer-Friedman

Peter Romer-Friedman (admitted to N.D. Ill.)
Pooja Shethji (*pro hac vice* motion
forthcoming)*
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW
Second Floor West
Washington, DC 20001
Tel: (202) 847-4400
Email: prf@outtengolden.com

R. Joseph Barton (admitted to N.D. Ill.)
BLOCK & LEVITON LLP
1735 20th Street NW
Washington, DC 20009
Tel: (202) 734-7046
Email: jbarton@blockesq.com

Paul W. Mollica (admitted to N.D. Ill.)
OUTTEN & GOLDEN LLP
161 North Clark Street
Suite 1600
Chicago, IL 60601
Tel: (312) 809-7010
Email: pwmollica@outtengolden.com

Michael J. Scimone (*pro hac vice* motion
forthcoming)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Tel: (212) 245-1000
Email: mscimone@outtengolden.com

Thomas G. Jarrard (admitted to N.D. Ill.)
LAW OFFICE OF THOMAS G. JARRARD
LLC
1020 N. Washington Street
Spokane, WA 99201
Tel: (425) 239-7290
Email: tjarrard@att.net

Matthew Z. Crotty (*pro hac vice* motion pending)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Avenue
Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email: matt@crottyandson.com

\* Admitted in New York; not yet a member of the D.C. Bar; supervised by a member of the D.C. Bar.

*Attorneys for Plaintiff and the Putative Class*

**<u>Certificate of Service</u>**

  I, Peter Romer-Friedman, an attorney, hereby certify that a true and correct copy of the foregoing was served on counsel of record using the Court's (ECF) electronic filing service on May 17, 2019.

<u>/s/ Peter Romer-Friedman</u>
Counsel for Plaintiff
