**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ERIC WHITE, on behalf of himself and all others similarly situated,** | ) ) ) | |
| | ) | Case No. 1:19-CV-00114 |
| **Plaintiff,** | ) ) | |
| | ) | Judge Charles Norgle |
| **v.** | ) ) | |
| **UNITED AIRLINES, INC. and UNITED CONTINENTAL HOLDINGS, INC.,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) ) ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    COUNT I FAILS TO STATE A CLAIM UNDER USERRA § 4316(B) ......................... 1

    A.    The Case Law And Administrative Guidance Relied On By Plaintiff Do Not Support The Relief He Seeks .......................................................................... 2

    B.    Wages During Military Leave Are Not A "Right or Benefit" Under USERRA's Plain Text ............................................................................................ 5

    C.    USERRA's Legislative History And Case Law Interpreting USERRA's Predecessor Statutes Do Not Support Plaintiff's Theory ...................................... 8

II.    COUNT I FAILS FOR THE SEPARATE REASON THAT UCH IS NOT PLAINTIFF'S "EMPLOYER" WITHIN THE MEANING OF USERRA ...................... 9

III.    COUNT II FAILS BECAUSE PLAINTIFF HAS NOT ALLEGED HE WAS DENIED A BENEFIT AFFORDED TO OTHER EMPLOYEES .................................. 11

IV.    USERRA § 4318 DOES NOT APPLY TO THE PLAN .................................................. 12

    A.    UCH's Profit Sharing Plan Is Not A Pension Plan Under USERRA .................. 12

    B.    The Plan Is Not An Employee Pension Benefit Plan As Defined By ERISA ................................................................................................................ 14

    C.    The Plan Is A Cash Bonus Plan ........................................................................ 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Baldwin v. City of Greensboro,*
No. 09 Civ. 742, 2010 WL 3211055 (M.D.N.C. Aug. 12, 2010) ...........................................11

*Benetiz v. Montebello,*
No. 09-0303-R, 2010 WL 3814374 (C.D. Cal. Sept. 27, 2010) ............................................12

*Bogie v. Rosenberg,*
705 F.3d 603 (7th Cir. 2013) ................................................................................................10

*Brill v. AK Steel Corp.,*
No. 09-cv-534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012)..................................................3

*Carter v. Seimens Bus. Servs., LLC,*
No. 10 Civ. 1000, 2010 WL 3522949 (N.D. Ill. Sept. 2, 2010)......................................10, 11

*Crews v. City of Mt. Vernon,*
567 F.3d 860 (7th Cir. 2009) .......................................................................................4, 11, 12

*Donovan v. Anheuser-Busch, Inc.,*
666 F.2d 315 (8th Cir. 1981) ................................................................................................13

*Duffer v. United Continental Holdings, Inc.,*
173 F. Supp. 3d 689 (N.D. Ill. 2016) ...............................................................................1, 3, 4

*Fishgold v. Sullivan Drydock & Repair Corp.,*
328 U.S. 275 (1946).............................................................................................................2, 7

*Gagnon v. Spring Corp.,*
284 F.3d 839 (8th Cir. 2002) ...............................................................................................6, 7

*Gross v. PPG Indus., Inc.,*
636 F.3d 884 (7th Cir. 2011) ..................................................................................................1

*Holzer v. Prudential Eq. Grp., LLC,*
458 F. Supp. 2d 587 (N.D. Ill. 2006) ....................................................................................15

*In re Baker,*
114 F.3d 636 (7th Cir. 1997) ................................................................................................14

*McDaniel v. Loyola Univ. Med. Ctr.*,
   No. 13-cv-06500, 2014 WL 4269126 (N.D. Ill. Aug. 28, 2014) ..............................................11

*Medina v. Catholic Health Initiatives*,
   877 F.3d 1213 (10th Cir. 2017) .......................................................................................13

*Middleton v. City of Chicago*,
   578 F.3d 656 (7th Cir. 2009) ...........................................................................................2

*Miller v. City of Indianapolis*,
   281 F.3d 648 (7th Cir. 2002) ...........................................................................................1

*Monroe v. Standard Oil Co.*,
   452 U.S. 549 (1981) ................................................................................................2, 7, 9

*Murphy v. Inexco Oil Co.*,
   611 F.2d 570 (5th Cir. 1980) .......................................................................................14, 15

*Oatway v. Am. Int'l Grp, Inc.*,
   325 F.3d 184 (3d Cir. 2003) .........................................................................................14, 15

*Rogers v. City of San Antonio*,
   392 F.3d 758 (5th Cir. 2004) ...........................................................................................9

*Roy v. Teachers Ins. And Annuity Ass'n*,
   878 F.2d 47 (2d 1989) .....................................................................................................13

*Tolbert v. RBC Capital Markets Corp.*,
   758 F.3d 619 (5th Cir. 2014) ...........................................................................................14

*Waltermyer v. Aluminum Co. of America*,
   804 F.2d 821 (3d Cir. 1986) ........................................................................................ passim

STATUTES

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §
   1003(b) ......................................................................................................13, 14, 15

Uniformed Services Employment and Reemployment Act ("USERRA"), 38
   U.S.C. § 4303(2) .......................................................................................................5, 6, 7

USERRA § 4316(b) ....................................................................................................... passim

USERRA § 4318 ......................................................................................................1, 12

USERRA § 4323(d)(1)(B) ...........................................................................................6

**OTHER AUTHORITIES**

20 C.F.R. § 1002.260 ..............................................................................................13

29 C.F.R. § 2510.3-2(c) ..........................................................................................15

29 C.F.R. § 2510.3-2(e) ..........................................................................................15

156 Cong. Rec. S7656-02 ..........................................................................................7

Joint Explanatory Statement for H.R. 3219 .................................................................7

Veterans' Reemployment Rights Handbook of 1970, Dep't of Labor and Office of
    Veterans' Reemployment Rights ("DOL 1970 Handbook"), at 53, 113,
    *available at* https://files.eric.ed.gov/fulltext/ED058452.pdf ...................................8

*Employee Compensation and Benefits Tax Guide*, at 301 (2018) .................................6

Justice, *Employment Rights of the Nat'l Guard and Reserve* (2011), *available at*
    https://www.justice.gov/sites/default/files/usao-
    ednc/legacy/2011/04/29/EmploymentRights.pdf.......................................................5

A review of the applicable statutory provisions and well-settled authority confirms Plaintiff cannot proceed with his USERRA claims against Defendants. As to Count I, Plaintiff has failed to establish the imposition of paid military leave is supported by USERRA's text, legislative history or precedent. Nor has Plaintiff identified any facts to establish UCH is or ever has been his employer. For Count II, Plaintiff's cases do not support the preferential treatment he seeks—profit-sharing credit for unpaid leave. And in Count III, Plaintiff likewise fails to support his conclusory allegation that UCH's Plan is an "employee pension benefit plan" under § 4318. For these reasons and those set forth in Defendants' Motion to Dismiss, dismissal is warranted on all three Counts.

## I.      COUNT I FAILS TO STATE A CLAIM UNDER USERRA § 4316(B).

The premise underlying Plaintiff's Count I—that he is entitled to paid military leave—directly contradicts USERRA's plain text, its legislative history, and case law and administrative guidance interpreting USERRA. As courts and agencies have made plain, USERRA simply does not mandate an obligation to pay service members for military leave. *See, e.g., Gross v. PPG Indus., Inc.*, 636 F.3d 884, 889 (7th Cir. 2011) (USERRA "does not obligate [the employer] to provide him with differential pay to supplement his military salary"); *Miller v. City of Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002) (USERRA "does not expressly require paid military leave"); *Duffer v. United Continental Holdings, Inc.*, 173 F. Supp. 3d 689, 699 (N.D. Ill. 2016) ("USERRA does not require employers to pay service members their wages during military leave periods."); Department of Labor ("DOL") Final Rules (2005) at 75292 ("[E]mployees absent from employment for military service are not required to be compensated by their civilian employer during that service."). Plaintiff's theory that Congress, *sub silentio*, reversed this longstanding principle by lumping "wages" into the "benefits" protected by

-1-

USERRA § 4316(b) is contradicted by statutory language, legislative history, and the policy determinations Congress made in enacting the statute. It cannot prevail.

Plaintiff's argument that this Court should let his claims proceed because USERRA should be construed in favor of service members does not carry the day either. *See* Plaintiff's Opposition ("Opp.") at 11-12. Courts cannot add obligations beyond those Congress intended when it enacted USERRA, despite its pro-service member approach. *See, e.g.*, *Monroe v. Standard Oil Co.*, 452 U.S. 549, 565 (1981) ("This Court does not sit to draw the most appropriate balance between benefits to employee-reservists and costs to employers. . . . [W]e must deal with the law as it is."); *Middleton v. City of Chicago*, 578 F.3d 656, 662 (7th Cir. 2009) ("recogniz[ing] Congress's desire to protect the employment and reemployment rights of our many veterans," but holding that courts "are charged with interpreting the laws that Congress enacts based on the language that it uses"). Indeed, the case on which Plaintiff chiefly relies establishes that courts must interpret USERRA based on the plain language Congress used and resist the temptation to add mandates not explicitly provided for in the statute. *See, e.g.*, *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285-87 (1946) (although predecessor to USERRA was to be "liberally construed," Court declined to expand its protections beyond those provided for by Congress). The same rule precludes expanding USERRA's protections in the manner proposed by Plaintiff here.

### A. The Case Law And Administrative Guidance Relied On By Plaintiff Do Not Support The Relief He Seeks.

None of the decisions cited by Plaintiff establish his novel theory that paid military leave is a "benefit" for purposes of USERRA § 4316(b). For example, *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986), relied on extensively in Plaintiff's opposition, actually supports Defendants' position. *See* Defendants' Motion to Dismiss ("Mot.") at 10-12.

*Waltermyer* announced an "equality" principle only with respect to *benefits*; it did not, as Plaintiff suggests, establish that wages are a "benefit" that an employer must pay to employees on military leave if it pays employees who take comparable leaves. *See* Opp. at 3-4. On the contrary, the majority emphasized that its holding did *not* require the employer to pay ordinary wages for military leaves, even though it did so for jury duty. *Id.* at 825-26 ("It is important, too, that work during a holiday week be seen only as establishing eligibility for holiday pay, not compensation for the other days not worked."). And Plaintiff misrepresents the dissenting opinion by quoting one sentence from it to suggest that it embraced the theory Plaintiff advances here. Opp. at 10. The very next sentence shows that it is not true; it states that it is "well settled" that the statute "does *not* require an employer to pay the employee for the time he is absent fulfilling reserve obligations." *Id.* at 827 (Hunter, J., dissenting) (emphasis added).

Plaintiff's citation to an out-of-Circuit district court decision, *Brill v. AK Steel Corp.*, No. 09-cv-534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012), is similarly unpersuasive. Opp. at 11. The issue before the court there was the employer's contention that its voluntary military leave policy and its jury duty/witness policy were not comparable. *Id.* at *4. The court was not presented with, and thus did not address, whether payment of wages while on military leave constitutes a "benefit" under § 4316(b).

Plaintiff's reliance on *Duffer* is misplaced as well. There, the court considered whether failing to distribute a portion of a $400 million arbitration award to absent service members violated USERRA's anti-discrimination provisions. *Duffer*, 173 F. Supp. 3d at 699. The court reaffirmed the general principle that "USERRA does not require employers to pay service members their wages during military leave periods." *Id.* (citing 20 C.F.R. § 1002.7(c)). The court, however, found "disputed issues of material fact" regarding the parties' "characterization

of the $400 million payment as *wages or benefits*," and thus denied summary judgment. *Id.* at 699-700 (emphasis added). Thus, the court agreed that USERRA does not obligate an employer to pay the wages of employees on military leave; it just could not determine, given the posture of the case, whether the parties' dispute concerned "wages" or "benefits." Because there is no dispute here that Plaintiff is seeking "wages," *Duffer* does not support Plaintiff's claim.

Plaintiff also misstates the holding of *Crews v. City of Mt. Vernon*, 567 F.3d 860 (7th Cir. 2009), which has nothing to do with military pay entitlement. Opp. at 3-4. *Crews* considered whether USERRA obligated the employer to continue a policy of allowing employees who missed weekend shifts to attend National Guard duties to make up their scheduled days off, a benefit it did not provide to employees who missed work for other, non-military activities. *Id.* at 865. The court held that the employer was not so obligated, as the plaintiffs were seeking to be treated preferentially, not equally. *Id.* at 867. *Crews* does not stand for the proposition that the right to pay during military leave is a "benefit" under USERRA; the court was not even presented with that question.

Plaintiff's attempts to distinguish other relevant authority are likewise futile. For example, Plaintiff inaccurately argues that DOL and Department of Justice ("DOJ") regulations and handbooks do not address § 4316(b)'s equality rule. Opp. at 13. That ignores that the DOL concluded in its Final Rules that "payments by employers to their employees absent to perform military service [are] *neither required nor addressed in USERRA*." DOL Final Rules at 75249 (emphasis added). In those same Final Rules, the DOL discussed § 4316(b)(1) in detail, without interpreting it to require paid military leave. *Id.* at 755262-65. The DOJ similarly has reiterated

that USERRA "requires only an unpaid leave of absence."[1]  Despite what Plaintiff would like this Court to believe, there is no "interpretative doubt" that employers are under no obligation to provide paid military leave.  *See also* Mot. at 5.

Plaintiff similarly misrepresents Section 3.5 of the USERRA Manual by claiming that it states that reservists are entitled to pay for military leave "when employees who take non-military leave receive pay for not working."  *See* Opp. at 13-14.  It does not.  Rather, the manual states that an "employee would be entitled under USERRA to receive *paid nonseniority furlough or leave-of-absence benefits*, such as holiday pay, that may be available to similarly-situated employees when on furlough or leave of absence."  Kathryn Piscitelli & Edward Still, The USERRA Manual § 3:5 Pay (2018) (emphasis added).  The other situations the manual cites regarding when a reservist may be entitled to pay relate to the use of accrued paid time-off benefits while on military leave and under a statute other than USERRA.  *Id.*   The manual simply does not stand for the proposition Plaintiff posits.

> **B.   Wages During Military Leave Are Not A "Right or Benefit" Under USERRA's Plain Text.**

Neither the text nor history of § 4316(b) and § 4303(2) support the inclusion of paid military leave within USERRA's definition of "rights and benefits," as Plaintiff proposes this Court adopt here.

As Defendants discussed previously, the plain language of § 4303(2) does not currently include wages for time not worked, and, until it was amended in 2010, excluded even wages for work performed.  Mot. at 6-9.  Nevertheless, Plaintiff argues that the express *exclusion* of wages for work performed from the definition of "benefits" prior to 2010 meant that it implicitly

---

[1] *See* U.S. Dep't of Justice, *Employment Rights of the Nat'l Guard and Reserve*, at 31 (2011), *available at* https://www.justice.gov/sites/default/files/usao-ednc/legacy/2011/04/29/EmploymentRights.pdf (last visited May 31, 2019).

*included* wages for work not performed.  Opp. at 5-6.  Plaintiff does not cite a single case

supporting this remarkable proposition, and it would contradict the long line of decisions holding

that USERRA and its predecessors did not establish an obligation to provide paid military leave.

Plaintiff's argument also is at odds with USERRA's statutory language and the plain

meaning of "wages," as distinct from "benefits."[2]  "Wages" are not "benefits," and vice versa.

*See, e.g.*, *Employee Compensation and Benefits Tax Guide*, at 301 (2018) (benefits "are a broad

form of compensation which are generally provided . . . as a supplement to current salary and

bonus payments").  Section 4303(2) confirms that Congress intended to carry forward that

distinction through its use of "accrue" in its definition of "benefits."  Benefits, such as those

listed as examples in § 4303(2), "accrue"—that is, they "accumulate periodically [and] increase

over a period of time."  Black's Law Dictionary (10th ed. 2014).  Wages do not; they are earned

based on the work performed, not accrued over time.  Moreover, USERRA elsewhere

differentiates between "wages" and "benefits," further demonstrating that Congress did not

generally intend for ordinary wages to be included within "benefits."  *See* USERRA §

4323(d)(1)(B) (court may require employer "to compensate the person for any loss of wages or

benefits" arising from violation of USERRA).

As a backup argument, Plaintiff asserts that, by adding "wages or salary *for work

performed*" to the definition of "benefits" in § 4303(2) in 2010, Congress "expressly included"

wages for work *not* performed while on military leave.  *See* Opp. at 5.  This illogical leap finds

no support in the text or the purpose underlying the amendment.  As Plaintiff admits, the 2010

amendment to USERRA had a "narrow focus"—to overrule *Gagnon v. Spring Corp.*, 284 F.3d

839 (8th Cir. 2002) and its treatment of wage discrimination under USERRA.  Opp. at 7-8.

---

[2] Section 4303(2) specifically defines "rights and benefits" synonymously with "benefits," and thus the two terms are interchangeable in the statute.

*Gagnon* involved a service member's claim under § 4311, USERRA's anti-discrimination provision, that he was paid less than his peers. The court dismissed the claim because "benefit," as defined in § 4303(2), "specifically excludes wages or salary for work performed." 284 F.3d at 853. In response, Congress amended § 4303(2) to include "wages or salary for work performed" for the express—and sole—purpose of overruling *Gagnon* and clarifying that USERRA prohibited wage discrimination. *See* Joint Explanatory Statement for H.R. 3219, as amended, 156 Cong. Rec. S7656-02, S7663, *available at* 2010 WL 3767475 (Sept. 28, 2010). There is nothing in the genesis of this narrow amendment or its legislative history to suggest that Congress intended thereby to expand USERRA's definition of "benefits" to include wages for work *not* performed, or to otherwise alter the longstanding rule that employers are not obligated to provide paid military leave.

If Congress had intended wages for work not performed to be included within "rights and benefits," it could have so stated either when enacting USERRA or when it amended § 4303(2) in light of *Gagnon*. *See Monroe*, 452 U.S. at 564 ("If Congress had wanted to impose an additional obligation upon employers, guaranteeing that employee-reservists have the opportunity to work the same number of hours, *or earn the same amount of pay that they would have earned without absences attributable to military reserve duties*, it could have done so expressly.") (emphasis added)). It did not, and the judiciary cannot create such an obligation on its own. *See, e.g.*, *Fishgold*, 328 U.S. at 286-87.

Congress's decision to specifically require paid military leave for federal agency employers, in contrast with its decision not to impose a paid military leave obligation on private sector employers, supports this reasoning. *See* Mot. at 9. Plaintiff obfuscates the relevance of this point. It is not that the two statutes are "[in]capable of coexistence." *See* Opp. at 14.

Rather, the fact that Congress created such an explicit obligation for federal employees reinforces the conclusion that Congress was well aware of how to establish a paid leave obligation when it intended to do so, and that it intentionally chose not to do so for private sector employers. *See* Mot. at 9.

### C. USERRA's Legislative History And Case Law Interpreting USERRA's Predecessor Statutes Do Not Support Plaintiff's Theory.

As Plaintiff recognizes, USERRA "needs to be read, not in isolation, but in the context of the history and evolution of the entire statute[.]" Opp. at 8. Yet, there is nothing in USERRA's legislative history or decisions interpreting its predecessor statutes that indicates Congress intended to mandate employers provide paid military leave if they provided other forms of paid leave. On the contrary, although those statutes specifically guaranteed that returning service-members would receive the higher pay *rate* they would have achieved but for their military service, they did not "require the employer to pay the employee for the time he is absent for military training duty, or even to make up the difference between his military pay and his regular earnings." *See* Veterans' Reemployment Rights Handbook of 1970, Dep't of Labor and Office of Veterans' Reemployment Rights ("DOL 1970 Handbook"), at 53, 113, *available at* https://files.eric.ed.gov/fulltext/ED058452.pdf (last visited May 31, 2019). Plaintiff's attempts to re-characterize this history are unavailing.

Plaintiff relies on *Waltermyer* and Congress's citation to it in USERRA's legislative history to argue that "Congress plainly intended to affirm *Waltermyer*'s holding that employees on military leave must receive the same right to pay as employees who take other types of leave and perform no work." *See* Opp. at 9. As discussed above, that is not at all what *Waltermyer* held; the majority expressly limited its holding to the holiday pay benefit, not compensation for other days not worked, and the dissent expressly stated that it was well-settled that employers

-8-

were *not* obligated to pay employees for the time spent on military leave. 804 F.2d at 825-27. While Congress could have expanded *Waltermyer* in enacting USERRA, it chose not to include an obligation to pay for military leave. *See* Mot. at 11-12. Plaintiff's reliance on *Waltermyer* is misplaced and misleading.

Plaintiff's attempt to distinguish *Monroe* is similarly unpersuasive. *See* Opp. at 10. In *Monroe*, the Supreme Court reviewed the legislative history of USERRA's predecessor statutes and held that "If Congress had wanted to impose an additional obligation upon employers, guaranteeing that employee-reservists have the opportunity to . . . earn the same amount of pay that they would have earned without absences attributable to military reserve duties, it could have done so expressly." 452 U.S. at 564; *see also id.* at 563 n.14 (noting that DOL 1970 Handbook confirmed that the VRRA "does not require the employer to pay the employee for the time he is absent for military training duty"). Plaintiff argues this is "dicta." Opp. at 10. Yet, courts have since recognized that, although Congress did not specifically mention *Monroe* in the legislative history of § 4316(b), Congress "necessarily intended for that section to codify *Monroe*'s interpretation . . . with respect to the effects upon the non-seniority rights of uniformed service members by their absence from civilian employment by reason of their military obligations." *Rogers v. City of San Antonio*, 392 F.3d 758, 768 (5th Cir. 2004). In short, there is nothing in the legislative history or the cases under USERRA's predecessor statutes to suggest that Congress intended USERRA to mandate paid military leave by virtue of providing other forms of paid leave. *See* Mot. at 12-13.

## II.    COUNT I FAILS FOR THE SEPARATE REASON THAT UCH IS NOT PLAINTIFF'S "EMPLOYER" WITHIN THE MEANING OF USERRA.

Plaintiff still has not pointed to any facts, as opposed to bare legal conclusions, to support his claim that UCH has "control over employment opportunities" within the meaning of

USERRA.  By Plaintiff's own admission, the only allegation of control in the Complaint is an unsupported claim that UCH negotiated and signed the collective bargaining agreement ("CBA").  *See* Opp. at 16.  This contention is directly contradicted by the CBA itself, which states that it is between "United Airlines, Inc." and the pilots "in the service of United Airlines, Inc.;" it covers the pilots employed by "the Company" (defined as "United Airlines, Inc."); and it is executed only by and on behalf of United Airlines, Inc.  *See* Mot. at 17.  Indeed, the fact that UCH signed a separate Letter Agreement, binding itself only to the "scope" clause, illustrates its intention to not be bound by other CBA provisions, including provisions related to compensation, leaves of absence, sick leave or jury duty.  Plaintiff fails to even address these material distinctions.  And in light of evidence directly refuting Plaintiff's conclusion, Plaintiff's allegations should not be taken as true.  *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

Likewise, whether Plaintiff deems UCH's lack of authority to hire, fire or promote "irrelevant" is of no moment, and Plaintiff's efforts to distinguish cases interpreting USERRA's "control" requirement fail.  Opp. at 16-17.  Courts interpreting USERRA's definition of "employer" have consistently held that "control over employment opportunities" refers to individuals or entities with authority or input over personnel decisions, including hiring and firing or promotion.  *See* Mot. at 15-16.  Plaintiff cites *Carter v. Seimens Bus. Servs., LLC*, No. 10 Civ. 1000, 2010 WL 3522949, at *8 (N.D. Ill. Sept. 2, 2010), for the proposition that USERRA supports a "broader interpretation" of "employer."  Opp. at 16-17.  Yet, in finding sufficient evidence of "control over employment opportunities," the court in *Carter* relied on the fact that the purported employer "influenced the company's decision *to terminate* [the plaintiff's]

employment," and "provide[d] advice and ma[de] recommendations to managers regarding *discipline and termination*." *Id.* at \*9 (emphasis added); *see also Baldwin v. City of Greensboro*, No. 09 Civ. 742, 2010 WL 3211055, at \*4 (M.D.N.C. Aug. 12, 2010) (employer status under USERRA sufficiently alleged where plaintiff asserted defendants were in plaintiff's supervisory chain of command, involved in preparing performance reviews, involved in daily supervision, and involved in reduction-in-force that led to termination). Thus, even these decisions confirm that the nature of the requisite control is tied to personnel decisions such as hiring, firing and promotion. *See* Mot. at 15-16. None of that is present here.

The only case Plaintiff cites regarding whether a parent and subsidiary can be considered a single employer within the meaning of USERRA is distinguishable. *See McDaniel v. Loyola Univ. Med. Ctr.*, No. 13-cv-06500, 2014 WL 4269126 (N.D. Ill. Aug. 28, 2014). In *McDaniel*, the defendants "cite[d] no case law or legal authority in support of their two-sentence argument," and thus, the court concluded that the defendants "[had] not met their burden of establishing that Plaintiff has failed to state a USERRA claim" against the parent. *Id.* at \*6. Accordingly, the court was never presented with, and did not consider, the merits of the defendants' argument. Here, by contrast, UCH has directly refuted the conclusory allegations of control on which Plaintiff relies.

## III. COUNT II FAILS BECAUSE PLAINTIFF HAS NOT ALLEGED HE WAS DENIED A BENEFIT AFFORDED TO OTHER EMPLOYEES.

Plaintiff attempts to salvage Count II—his § 4316(b) profit-sharing claim—by arguing that the Court should consider the profit sharing credit Defendants provided to employees who took *paid* leave. Opp. at 18. But § 4316(b) requires only that service members receive the same non-seniority benefits as similarly-situated employees. *Crews*, 567 F.3d at 865. Plaintiff has not alleged that Defendants provided any other employees profit-sharing credit when they took

*unpaid* leave. His complaint is that those employees received pay (and thus profit-sharing credit, based on their wages earned) during certain leaves, making this claim entirely derivative of Count I. *See* Mot. at 19-20.

The two cases Plaintiff cites in this context do not help his cause. In *Benetiz v. Montebello*, No. 09-0303-R, 2010 WL 3814374 (C.D. Cal. Sept. 27, 2010), the court found that the city violated § 4316(b) because the plaintiff did not accrue vacation time during his unpaid military leave, while employees on paid leaves of absences did. *Id.* at *2. Likewise, the *Waltermyer* majority held that the employer could not deny employees from participating in a holiday because it provided that benefit to employees on comparable leaves of absence, paid or unpaid. 804 F.2d at 825-27. Those cases are distinguishable because in both, the fact that the employees were on leave qualified them for the benefit. That is not the case here; employees received profit-sharing credit because they received wages, not because they were on leave.

Plaintiff has not alleged he was denied a benefit—profit-sharing credit—afforded to similarly-situated employees—i.e., those on other forms of unpaid leave. Rather, he is asking for something that no other category of employee has the right to: an annual adjustment to his profit-sharing credit based on "income" that he did not receive. USERRA does not require such preferential treatment. *Crews*, 567 F.3d. at 865.

## IV. USERRA § 4318 DOES NOT APPLY TO THE PLAN.

Count III alleges that Defendants miscalculated Plaintiff's profit-sharing awards by failing to consider his military leave as "service" under the Plan, in violation of USERRA § 4318. Because the Plan is not an "employee pension benefit plan" covered by § 4318, that claim fails.

### A. UCH's Profit Sharing Plan Is Not A Pension Plan Under USERRA.

Plaintiff argues that regardless of whether the Plan is an employee pension benefit plan

under ERISA (which, as discussed below, it is not), it nevertheless is a "pension plan" under USERRA. Opp. at 19-21. Neither the statutes nor their regulations support that position.

Plaintiff's argument relies exclusively on a regulation that states that USERRA "covers certain pension plans not covered by ERISA, such as those sponsored by a State, government entity, or church for its employees." 20 C.F.R. § 1002.260. He asserts that this sort of "such as" language "typically indicates that enumerated examples are not comprehensive." Opp. at 20. That argument, however, does not provide a basis for bringing any and all types of benefit plans under USERRA, only those of the same kind as those specifically enumerated. *Donovan v. Anheuser-Busch, Inc.*, 666 F.2d 315, 327 (8th Cir. 1981) ("such as" is a "phrase of general similitude indicating that there are includable other matters *of the same kind* which are not specifically enumerated by the standard") (emphasis added). The "such as" clause here must be read in conjunction with the first part of the regulation, which states that USERRA covers ERISA employee pension benefit plans—i.e., a plan that "provides retirement income to employees, or defers employee income to a period extending to or beyond the termination of employment." 20 C.F.R. § 1002.260. Read in this context, the meaning of the "such as" clause becomes clear: it encompasses other pension plans, including specifically those sponsored by employers excluded from ERISA because of Constitutional considerations.[3] Indeed, the clause specifically refers to "pension plans"—the same term used earlier in the regulation—which shows that it is intended to cover only the same type of plans: those that provide retirement benefits. As explained below, the Plan does not do that, and thus Plaintiff's argument fails as a matter of law.

---

[3] *See, e.g.*, *Roy v. Teachers Ins. And Annuity Ass'n*, 878 F.2d 47, 49 (2d 1989) ("The governmental plan exemption embodied in section 1003(b) evinces 'Congress' intent to refrain from interfering with the manner in which state and local governments operate employee benefit systems"); *Medina v. Catholic Health Initiatives*, 877 F.3d 1213, 1231 (10th Cir. 2017) (outlining that Congress exempted church plans from ERISA in an effort to avoid excessive Government entanglement with religion and First Amendment issues).

**B.     The Plan Is Not An Employee Pension Benefit Plan As Defined By ERISA.**

Plaintiff alternatively asserts that the Plan falls within ERISA's definition of an employee pension benefit plan. Opp. at 21-23. That argument fares no better.

Plaintiff contends that the Plan's "designation as a profit-sharing plan" suggests that it is a pension plan." Opp. at 22 (citing *In re Baker*, 114 F.3d 636 (7th Cir. 1997)). But *Baker* did not rely on the plan's name in holding that it was a pension plan. On the contrary, it reached that conclusion because the plan "provides for deferred and retirement income" and none of the five exceptions in 29 U.S.C. § 1003(b) applied. *Id.* at 639-40. Thus *Baker* is of no help to Plaintiff.

Plaintiff next argues that in order to qualify as an employee pension benefit plan, the plan "need not systematically defer income" but merely "result in a deferral of income." Opp. at 22 (citing *Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619 (5th Cir. 2014)). *Tolbert* is factually inapposite. There, the court held that the plan was an employee pension benefit plan because it specifically stated that it was a "deferred compensation plan" whose purpose was "to defer receipt of a portion of their compensation to be earned with respect to the upcoming Plan year," and because it had both a voluntary and a mandatory deferred compensation portion. *Id.* at 625-26. Thus, the plan differs from the Plan here both in its express terms (deferred compensation plan versus cash bonus plan) and its surrounding circumstances ("top hat" plan for select group of management employees versus cash bonus for all employees). Accordingly, *Tolbert* provides no basis to conclude that the Plan is an ERISA employee pension benefit plan.

Plaintiff attempts to distinguish cases cited by Defendants, arguing that "most" involved stock awards or options, and courts "have uniformly held that an incentive stock option plan is not an ERISA plan." Opp. at 23 (citing *Oatway v. Am. Int'l Grp, Inc.*, 325 F.3d 184, 187 (3d Cir. 2003)). That misrepresents the main point of *Oatway*, which cites the "leading case" on this issue (*Murphy v. Inexco Oil Co.*, 611 F.2d 570 (5th Cir. 1980)), noting that it agrees with

-14-

"*Murphy* . . . and the unbroken line of cases that have followed *Murphy*'s reasoning" that a "bonus program was not an ERISA plan because it was 'evidently designed to provide current rather than retirement income to [the company's] employees.'" *Oatway*, 325 F.3d at 188-89. The Plan likewise is designed to provide current rather than retirement income, and thus, consistent with this "unbroken line of cases," is not an ERISA plan.

### C.    The Plan Is A Cash Bonus Plan.

Plaintiff contends that the regulation that excludes cash bonus programs from ERISA's definition of "employee pension benefit plan" (29 C.F.R. § 2510.3-2(e)) does not apply to USERRA's definition of that term.  Opp. at 24.  Plaintiff cites no authority for that proposition, and it makes no sense, given that USERRA expressly incorporates ERISA's definition of employee benefit pension plan.  Mot. at 20.  The regulation directly relates to that definition, and thus is relevant to whether such plans fall within USERRA.  And based on that regulation, the Plan is not an "employee pension benefit plan" because it makes payments "to some or all of its employees as bonuses for work performed."  29 C.F.R. § 2510.3-2(c).  This is fatal to Count III.

Plaintiff alternatively argues that even if this regulation applies, the Plan is not a bonus plan because it applies to a broad spectrum of employees and the condition and amount of payment is set by formula.  Opp. at 25 (citing *Holzer v. Prudential Eq. Grp., LLC*, 458 F. Supp. 2d 587 (N.D. Ill. 2006)).  However, nothing in the bonus program regulation precludes a bonus from going to a broad category of employees.  On the contrary, it pertains to payments to "some *or all* employees."  29 C.F.R. § 2510.3-2(c) (emphasis added).  Nor does *Holzer* help Plaintiff's position.  The *Holzer* plan allowed employees to deduct pre-tax earnings into a stock fund whose shares vested three years later, thus arguably creating deferred compensation.  458 F. Supp. 2d at 590-91.  The Plan, by contrast, pays out "no later than March 15 or as soon as practicable thereafter following a year in which the qualified employees are entitled" to the bonus.

-15-

Dated: May 31, 2019                      Respectfully submitted,

                                        s/ Michael J. Gray
                                        Michael J. Gray (6210880)
                                        Ann-Marie Woods (6321757)
                                        Jennifer L. Ralph (6327471)
                                        JONES DAY
                                        77 West Wacker
                                        Chicago, IL 60601-1692
                                        Telephone: (312) 782-3939
                                        Facsimile:  (312) 782-8585
                                        mjgray@jonesday.com
                                        awoods@jonesday.com
                                        jralph@jonesday.com

                                        Douglas W. Hall (*pro hac vice* pending)
                                        Miguel Eaton (*pro hac vice* forthcoming)
                                        JONES DAY
                                        51 Louisiana Avenue, N.W.
                                        Washington, D.C. 200001
                                        Telephone: (202) 879-3939
                                        Facsimile: (202) 626-1700
                                        dwhall@jonesday.com

                                        *Attorneys for Defendants United Airlines, Inc.*
                                        *and United Continental Holdings, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 31, 2019, I electronically filed the foregoing *Reply in Support of Defendants' Motion to Dismiss* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

s/ Michael J. Gray
*One of the Attorneys for Defendants.*

-17-